**Michael E. TURK, Plaintiff,**

v.

**TIG INSURANCE COMPANY; Does I through X; and Roe Corporations XI through XX, Defendants.**

Case No. 2:08–cv–00958–RLH–PAL.

United States District Court,
D. Nevada.

April 17, 2009.

Ariel E. Stern, Ballard Spahr Andrews & Ingersoll, LLP, Las Vegas, NV, Kurt A. Smith, Smith & Kim Attorneys At Law, Henderson, NV, for Plaintiff.

Andrew R. McCloskey, Law Offices of Andrew R. McCloskey, Las Vegas, NV, for Defendant.

## ORDER

(Motion for Summary Judgment—# 12; Motion to Bifurcate Trial—# 13; Countermotion for Summary Judgment—# 15)

ROGER L. HUNT, Chief Judge.

Before the Court is Defendant TIG Insurance Co.'s **Motion for Summary Judgment** (# 12), filed December 29, 2008. The Court has also considered Plaintiff Michael Turk's Opposition (# 15), filed January 17, 2009, and Defendant's Reply (# 28), filed January 30, 2009.

Also before the Court is Plaintiff's **Countermotion for Summary Judgment** (# 15), filed January 17, 2009; Defendant's Opposition (# 29), filed February 4, 2009; and Plaintiff's Reply (# 31), filed February 18, 2009.

Also before the Court is Defendant's **Motion to Bifurcate Trial** (# 13), filed January 9, 2009. The Court has also considered Plaintiff's Opposition (# 21), filed January 27, 2009, and Defendant's Reply (# 30), filed February 10, 2009.

## BACKGROUND

This case involves an insurance coverage dispute arising from two different insurance policies issued by Defendant TIG Insurance Company. TIG insured State Insulation & Drywall under three general liability policies and three excess liability policies from August 14, 1996, to August 14, 1999 ("State Policies"). TIG also insured Rancho Del Norte Villas, Inc. ("Rancho del Norte"), a construction company, under two "Coverage Plus Umbrella Liability Policies" from December 30, 1998, to September 1, 2000 ("Rancho Policies"). In 1997, Rancho del Norte built an apartment complex in North Las Vegas called Villas at Rancho del Norte (the "Villas"). Plaintiff Michael Turk alleges that at the time Rancho del Norte built the apartment complex, he was an officer and minority shareholder of the company.

## I. The Underlying Lawsuit

In October 2004, the Disabled Rights Action Committee ("DRAC"), through its "Tester" Tamara Thompson, visited the Villas and determined that it was not built in accordance with the Fair Housing Act, 42 U.S.C. § 3602. On February 4, 2005, Thompson and DRAC filed suit (the "*Thompson* lawsuit") against Rancho del Norte, Defendant Michael Turk, and various other individuals and entities involved in the construction of the Villas, Thompson and DRAC alleged that the defendants discriminated against disabled individuals in violation of the Fair Housing Act by failing to provide (1) an accessible building entrance for handicapped individuals; (2) handicapped parking without curb cuts; and (3) handicapped access to the pool.

## II. Request for Insurance Coverage

Turk claims he is entitled to insurance coverage under the State and Rancho Policies because he was an officer of Rancho del Norte from 1994 to 2001. According to Turk, he is entitled to coverage under the State Policy because Rancho del Norte is an additional insured under the State Policies. Turk asserts that under the Rancho Policies, however, he is a named insured. Under the Rancho Policies, TIG

provides Rancho del Norte "Coverage Plus Umbrella Liability" insurance above two general commercial liability policies provided by Clarendon National Insurance Company ("Clarendon Policies" or "underlying insurance"). The Rancho Policies state that TIC will pay, on Rancho del Norte's behalf, damages due to personal injury, property damages, or advertising injury during the policy period, but only for losses in excess of policy limits on the underlying insurance. Nonetheless, the Rancho Policies also state that TIG will insure Rancho del Norte "with respect to an occurrence for which no underlying insurance applies" as long as the Rancho Policies apply. (Dkt. # 12, Mot. for Summ. J. Ex. G–H.) The Rancho Policies cover Rancho del Norte and its officers, directors, and shareholders. Notably, the policies do not cover "any claim or suit based upon or alleging discrimination against any person." (*Id.*) This insurance limitation applies to discrimination based on "age, ethnic origin, marital status, physical or mental hardship, race, religious affiliation, sex, or sexual orientation." (*Id.*)

In addition to seeking coverage from TIG, Turk tendered defense to Clarendon Insurance. Clarendon has refused to defend or indemnify Turk, claiming that its insurance policy does not cover the claims brought by the *Thompson* plaintiffs.

Turk claims that in June 2007, he found a document indicating that Rancho had been insured by TIG. He also alleges he found a document indicating that TIG insured Rancho del Norte Communities, a company he was affiliated with between 1996 and 2001. On June 27, 2007, Plaintiff's counsel tendered defense of the DRAC Complaint and sent three policy numbers to TIG, two for the State Policies and one for the Rancho Policies. TIG alleges that Turk's tender of defense was "shrouded in confusion" because Turk did not specify the correct policy periods or the correct entities involved in this dispute. (Dkt. # 29, Opp'n 12.) After not hearing from TIG for over a month, Turk's attorney called TIG to inquire about the status of his claim. Turk alleges that a TIG representative informed his attorney that TIG never insured Rancho del Norte and that the policy number Turk sent to TIG applied to the State Policies, not to the Rancho Policies. This representative also told Turk's attorney that Rancho del Norte was not an additional insured under the State Policies. In August 2007, Turk's attorney sent a fax asking TIG to send a copy of the Rancho Policies to him. According to Turk, TIG did not comply with this request.

Turk alleges his attorney made several phone calls to TIG over the course of the next several months, but was never given a straight answer regarding his request for insurance coverage. TIG denied Turk's claim on March 4, 2008, on the basis that neither Rancho nor Turk was an additional insured under the State Policies. On March 7, 2008, Turk disputed this decision, and he asked TIG to insure him under the Rancho Policies. On March 13, 2008, TIG again told Turk that it never insured Rancho del Norte under any insurance policy and that it would not defend him in the *Thompson* litigation. TIG continued asserting that it did not insure Rancho del Norte until November 18, 2008, when it faxed the Rancho Policies to Turk stating that it had "recently obtained" the policies. (Dkt. # 17, Appx. Ex. 22.) TIG alleges that once it located the two Rancho Policies, it "immediately produced them to Turk's counsel." (Dkt. # 29, Opp'n, 13.)

On June 24, 2008, Turk filed suit against TIG in Nevada state court. In his Amended Complaint, filed the next day, Turk asserted claims for breach of contract, breach of the covenant of good faith and

fair dealing, and unfair practices in settling claims. Turk also seeks declaratory relief. On July 25, 2008, Defendant removed the case to this Court based on the diversity of the parties. Each party has now moved for summary judgment, and Defendant has also filed a Motion to Bifurcate the Trial. For the reasons discussed below, Defendant's Motion for Summary Judgment is granted in part and denied in part. Plaintiff's Countermotion for Summary Judgment and Defendant's Motion to Bifurcate are both denied.

## DISCUSSION

### I. Motion for Summary Judgment

A court will grant summary judgment if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party, and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In evaluating a motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982).

The movant bears the burden of showing that there are no genuine issues of material fact. *Id.* "In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir.2000). Once the movant satisfies the requirements of Rule 56, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505; *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir.1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

### II. Breach of Contract

Turk alleges TIG breached its insurance contract by refusing to defend or indemnify him in the *Thompson* lawsuit. Under Nevada law, an insurer has a duty to defend its insured whenever there is potential for coverage. *Bidart v. Am. Title*, 734 P.2d 732, 734 (Nev.1987). In other words, "[a]n insurer ... bears a duty to defend its insured whenever it ascertains facts which give rise to a potential for coverage under the policy." *United Nat'l Ins. Co. v. Frontier Ins. Co.*, 120 Nev. 678, 99 P.3d 1153, 1158 (2004) (quoting *Gray v. Zurich Ins. Co.*, 65 Cal.2d 263, 54 Cal. Rptr. 104, 419 P.2d 168, 177 (1966)). "If there is any doubt about whether the duty to defend arises, this doubt must be resolved in favor of the insured." *Id.* (citing *Aetna Cas. & Sur. Co. v. Centennial Ins. Co.*, 838 F.2d 346, 350 (9th Cir.1988)). However, "the duty to defend is not absolute. A potential for coverage only exists when there is arguable or possible coverage. Determining whether an insurer owes a duty to defend is achieved by com-

paring the allegations of the complaint with the terms of the policy." *Id.*

In contrast to the duty to defend, the duty to indemnify arises only when the insured "becomes legally obligated to pay damages in the underlying action that gives rise to a claim under the policy." *Id.* at 1157 (quoting *Zurich Ins. Co. v. Raymark Indus.*, 118 Ill.2d 23, 112 Ill.Dec. 684, 514 N.E.2d 150, 163 (1987)). Because the duty to indemnify arises only when the insured is liable under the policy, the duty to indemnify does not exist in the absence of insurance coverage. *See id.* at 1157–58. As Turk claims TIG had a duty to defend and indemnify him under the State and Rancho Policies, the Court addresses each insurance policy separately.

## A. The State Policies

Turk bears the initial burden of establishing the potential for coverage under the State Policies. *Modern Dev. Co. v. Navigators Ins. Co.*, 111 Cal.App.4th 932, 4 Cal.Rptr.3d 528, 534 (2003). After reviewing the evidence, the Court finds that Turk has failed to carry this burden and that TIG has neither the duty to defend nor indemnify him under the State Policies. If Turk is entitled to coverage he would have to be either a named or additional insured under the State Policies. The policies state that the named insured is State Insulation & Drywall, a drywall contractor. The State Policies do not name another insured and Turk does not argue that he is a named policyholder. Instead, Plaintiff claims he is entitled to coverage because he was an officer of Rancho del Norte Communities, Inc. ("Rancho Communities"), a company that, according to Plaintiff, is an additional insured under the State Policies.

Even assuming Turk was an officer of Rancho Communities during the applicable policy period, he is still not entitled to insurance coverage under the State Policies. First, Turk has not shown that Rancho Communities is an additional insured under the policies. While the State Policies name various companies as additional insureds, Rancho Communities is not one of them. Despite this fact, Plaintiff claims he is entitled to coverage on the basis of a certificate of insurance, dated June 19, 1998, indicating that Rancho Communities is an additional insured of State Insulation & Drywall. Although the certificate of insurance indicates that Rancho Communities is an additional insured under a State Insulation & Drywall policy issued by TIG, the certificate does not apply to the Villas construction project that is the center of this litigation. Instead, the certificate states that Rancho Communities is an additional insured for a construction project called Decatur Villas. Nowhere in the certificate is the Villas del Norte Apartment Complex mentioned. Thus, despite Turk's arguments to the contrary, the Court finds that the State Policies do not list Rancho del Norte as an additional insured under the Villas construction project. Consequently, there is no potential for coverage under the State Policies, and as a result, TIG had no duty to defend or indemnify Turk in the *Thompson* litigation. Defendant's Motion for Summary Judgment on Plaintiff's claim for breach of contract is granted as it applies to the State Policy. The Court therefore denies Turk's Countermotion for Summary Judgment as it pertains to this claim.

## B. The Rancho Policies

Plaintiff also claims TIG breached its contractual duty to defend and indemnify under the Rancho Policies. According to Turk, TIG was obligated to provide insurance coverage even if Clarendon Insurance, the underlying insurer, refused to do so. TIG moves for summary judgment on this claim for a number of different reasons: (1) Turk is not entitled to coverage

under the Rancho Policies because Clarendon Insurance has not exhausted its coverage obligations; (2) the Rancho Policies specifically exclude claims for discrimination; and (3) the actions giving rise to the *Thompson* litigation did not occur while the Rancho Policies were in effect.

The Court does not address all of TIG's arguments because the fact that the Rancho Policies exclude discrimination claims from coverage in and of itself warrants granting summary judgment. The Rancho Policies specifically state that insurance coverage is not available for "any claim or suit based upon or alleging discrimination against any person. Discrimination includes ... physical hardship." (Dkt. # 12, Mot. for Summ. J. Ex. G–H.) Thus, under the plain meaning of the policy, Rancho and its officers are not entitled to insurance coverage if a person brings a discrimination claim. In the *Thompson* lawsuit, the plaintiffs alleged a single claim: discrimination against disabled persons based on the construction of a multifamily dwelling in violation of 42 U.S.C. § 3604(f). Given the plain language of the Rancho Policies and the *Thompson* plaintiff's discrimination claim, the Court finds TIG had no duty to defend or indemnify Turk.

Turk makes the following arguments regarding why he is entitled to coverage despite the wording of the Rancho Policies: (1) DRAC is not a person under the Fair Housing Act; (2) Thompson and DRAC's claim is actually for faulty construction rather than discrimination; and (3) the Rancho Policies do not exclude claims under the Fair Housing Act. Although Turk's arguments are creative and resourceful, they are ultimately incorrect. First, despite Turk's assertions to the contrary, the Fair Housing Act defines "person" to include corporations and associations. 42 U.S.C. § 3602(d). Applying this statutory provision, the Ninth Circuit has held that

as a non-profit corporation, DRAC is a person under the Fair Housing Act. *Smith v. Pac. Props. & Dev. Corp.*, 358 F.3d 1097, 1104–05 (9th Cir.2004). Second, the Court is not persuaded by Turk's argument that *Thompson* involves defective construction rather than discrimination. Thompson and DRAC's only cause of action is for violation of the Fair Housing Act, and they specifically cite section 3604(f)(3)(c) of the Act, which states that "discrimination includes ... the design and construction of covered multifamily dwellings [that are not] readily accessible to and usable by handicapped persons." As outlined by the Act, the construction of a building, if not done in compliance with the Federal Housing Act, is an act of discrimination. Turk's assertion is therefore incorrect.

Finally, Turk argues that because the Rancho Policies differentiate between discrimination caused by violation of a statute and "other types of discrimination," the fact that the Fair Housing Act is not specifically enumerated in the insurance contract means it is covered under the Rancho Policies. According to Turk, because the policy specifically excludes claims arising under ERISA, Worker's Compensation, Unemployment Compensation, and Disability Benefits statutes, it does not exclude any other statutory discrimination claims. This argument contradicts the very language of the Rancho Policies. Although the policies exclude claims arising from the aforementioned statutes, they also clearly state that there is no coverage for suits arising from "discrimination on the basis of age, ethnic origin, marital status, physical or mental hardship, race, religious affiliation, sex, or sexual orientation." (Dkt. # 12, Mot. for Summ. J. Ex. G–H.) Many of these claims, including discrimination under the Fair Housing Act, arise under statutory law. *See* Title VII, 42 U.S.C. § 2000e; Americans with Disabilities Act, § 42 U.S.C. 12101; Age Dis-

crimination in Employment Act, § 29 U.S.C. 621. Consequently, Plaintiff's argument that only certain statutory causes of action listed in the policies are excluded is illogical. The Rancho Policies specifically exclude numerous discrimination claims that are created by statute. Because the *Thompson* plaintiffs allege that Rancho del Norte discriminates against individuals with physical hardships, Turk is clearly not entitled to coverage under the Rancho Policies. The Court therefore grants TIG's Motion for Summary Judgment on Plaintiff's breach of contract claim under the Rancho Policies and denies Turk's Countermotion for Summary Judgment on the same claim.

## III. Declaratory Relief

Turk seeks declaratory relief from this Court in the form of an order stating (1) that TIG has a duty to defend him in the *Thompson* lawsuit; and (2) that TIG has a duty to indemnify him from losses incurred in the suit. Because the Court holds that neither duty exists in this case, it grants TIG's Motion for Summary Judgment on Turk's request for declaratory relief. The Court also denies Turk's Countermotion for Summary Judgment on this same claim.

## IV. Unfair Claim Practices: Nev.Rev. Stat. § 686A.310

Turk also brings a statutory claim, alleging that Defendants violated Nev.Rev.Stat. § 686A.310, Nevada's Unfair Claim Practices statute. This statute was enacted as "part of a comprehensive plan to regulate insurance practice in Nevada." *Pioneer Chlor Alkali Co. v. Nat'l Union Fire Ins.*, 863 F.Supp. 1237, 1241 (D.Nev.1994). The statute expressly grants insureds a private right of action against insurance companies that violate this statute. *Id.* In his Complaint, Plaintiff references the language of NRS § 686A.310 and asserts that Defendant is liable for (a) misrepresenting

the contents of the insurance policies; (b) failing to acknowledge and act reasonably promptly; (c) failing to adopt reasonable standards for the prompt investigation of claims; (d) failing to affirm or deny coverage within a reasonable time; (e) failing to effectuate prompt and fair settlement of claims; (f) compelling Turk to institute litigation to recover amounts due; and (g) failing to provide a reasonable explanation for denying the request for coverage. In his Opposition to TIG's Motion for Summary Judgment, Turk specifically alleges that TIG violated § 686A.310 when it failed to provide a copy of the insurance policies, refused to admit that it insured Rancho del Norte, and refused to fully disclose all of the benefits and coverages available under the State and Rancho Policies.

■■■■■■ TIG moves for summary judgment, arguing that a claim under this statute cannot be brought in the absence of insurance coverage. In support of its assertion, Defendant cites to a California insurance statute that allows claims to be brought only if the insured is entitled to coverage. Cal. Ins.Code. § 790.03. The Court disagrees with Defendant's argument and holds that an insured can bring a claim for violation of § 686A.310 in the absence of actual coverage. The plain language of the statute guides the Court's decision. Under § 310(1)(d) an insurer violates this statute when it fails to "affirm or deny coverage within a reasonable time," Thus, an insured has a cause of action against an insurer if the insurer waits an inordinate amount of time before informing the insured that there is no coverage. In addition to this plain language, the fact that the statute provides a private right of action and was enacted as "part of a comprehensive plan to regulate insurance practice in Nevada" supports the conclusion that liability under the statute is

not limited by whether or not insurance coverage exists. *Pioneer Chlor Alkali Co.,* 863 F.Supp. at 1241. Finally, it should be noted that in *Pioneer Chlor Alkali v. National Union Fire Insurance* this Court held that "the provisions of NRS § 686A.310 address the manner in which an insurer handles an insured's claim whether or not the claim is denied." *Id.* at 1243. TIG's Motion for Summary Judgment on this cause of action is denied.

■ Because Turk has also moved for summary judgment on this claim, the Court looks to see if, as a matter of law, Turk may recover under Nevada's Unfair Claim Practices statute. Having reviewed the evidence, the Court concludes that a genuine issue of material fact exists regarding this issue. In coming to this conclusion, the Court is aware that a number of important facts are not in dispute. For example, it is a fact that on August 3, 2007, Plaintiff's counsel requested a copy of the Rancho Policies from TIG. It is also undisputed that in March 2008, TIG denied coverage under the State Policies and stated that it had never insured Rancho del Norte under any policy. Furthermore, TIG admits it held to this assertion until November 18, 2008, when it faxed a copy of the Rancho Policies to Plaintiff. Despite these undisputed facts, however, the Court finds a genuine factual dispute exists regarding whether TIG violated § 686A.310. TIG asserts that part of the reason it was unable to locate the Rancho Policies was that Turk did not specify the correct policy periods to which coverage applied. Furthermore, TIG asserts that it immediately sent copies of the policies to Turk once it found them. Given these assertions, the Court cannot say as a matter of law that TIG violated the Unfair Claim Practices statute. Whether TIG did so, and the extent to which Turk was harmed, must be determined by the finder of fact. Turk's Countermotion for Summary Judgment on this claim is denied.

## V. Breach of the Duty of Good Faith and Fair Dealing

In addition to his cause of action under Nevada's Unfair Claim Practices statute, Turk claims TIG violated its covenant of good faith and fair dealing when it refused to defend or indemnify him. TIG moves for summary judgment arguing that it cannot be liable under this claim because Turk was not entitled to insurance coverage. To support its assertion, TIG again cites to California law, which states that without insurance coverage a claim for breach of the duty of good faith and fair dealing does not arise. *Modern Dev. Co.,* 4 Cal.Rptr.3d at 535; *see also Guebara v. Allstate Ins. Co.,* 237 F.3d 987, 992 (9th Cir.2001) ("A bad faith claim cannot be maintained unless policy benefits are due.").

■ Unlike California, Nevada has not specifically addressed whether an insured can assert a claim for breach of the duty of good faith and fair dealing in the absence of insurance coverage. In Nevada, "[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and execution." *A.C. Shaw Constr., Inc. v. Washoe County,* 105 Nev. 913, 784 P.2d 9, 9 (1989) (quoting Restatement (Second) of Contracts § 205). Consequently, "when one party performs a contract in a manner that is unfaithful to the purpose of the contract ... damages may be awarded against the party who does not act in good faith." *Hilton Hotels v. Butch Lewis Prods.,* 107 Nev. 226, 808 P.2d 919, 923 (1991). A breach of the duty of good faith and fair dealing can occur "[w]here the terms of a contract are literally complied with but one party to the contract deliberately contravenes the intention and spirit of the contract." *Id.* at 922–23.

■ A claim for breach of the duty of good faith and fair dealing can be rooted in tort or contract law. *Id.* at 923. This

claim sounds in tort when a "special element of reliance or fiduciary duty" exists between the parties. *Great Am. Ins. Co. v. Gen. Builders, Inc.*, 113 Nev. 346, 934 P.2d 257, 263 (1997). When such a relationship exists, tort recovery is appropriate if "the party in the superior or entrusted position" has engaged in "grievous and perfidious conduct." *Id.* (quoting *K Mart Corp. v. Ponsock*, 103 Nev. 39, 732 P.2d 1364, 1371 (1987)). Although tort liability for breach of the covenant of good faith and fair dealing is limited to "rare and exceptional cases," the Nevada Supreme Court holds that the relationship between an insurer and an insured is one such case. *Id.*

The Court disagrees with TIG's assertion a claim for breach of the implied covenant of good faith and fair dealing fails in the absence of insurance coverage. As the Supreme Court of Nevada stated in the *A.C. Shaw Construction v. Washoe County* case, *every* contract imposes upon each party a duty of good faith and fair dealing. 784 P.2d at 9 (emphasis added). Turk and TIG entered into a contract for insurance and the Court sees no reason why TIG should be able escape the duties imposed upon all contracting parties in Nevada, even if Turk's claim for coverage was ultimately unfounded. Moreover, even if TIG did not breach the express terms of the insurance contract, it may very well have breached the spirit of the contract by asserting for several months that it never insured Rancho del Norte. *See Hilton Hotels v. Butch Lewis Prods.*, 808 P.2d at 922–23 (A breach of the duty of good faith and fair dealing can occur "[w]here the terms of a contract are literally complied with but one party ... deliberately contravenes the intention and spirit of the contract."). For this same reason, the Court concludes that Plaintiff may also have a claim for tortious breach of this duty: TIG owed a special duty of loyalty to its insured that it may have violated when it continued to assert that it never insured Rancho del Norte.

But while the Court denies Defendant's Motion for Summary Judgment on this claim, it also denies Plaintiffs Countermotion as well. As noted previously, a genuine issue of material facts exists regarding whether TIG failed to act in good faith when it processed and denied Turk's claim. When TIG should have known Rancho del Norte was its insured and when it should have provided Turk with a copy of the policy are questions for the finder of fact.

## VI. Motion to Bifurcate the Trial

In addition to seeking summary judgment, TIG filed a Motion to Bifurcate the Trial (# 13). In this Motion, TIG asks the Court to bifurcate Turk's contractual claims from his non-contractual claims in order to promote judicial efficiency and further the ends of justice. This Motion is now moot. Because the Court grants TIG's Motion for Summary Judgment on Turk's breach of contract claim, the two remaining causes of action—violation of NRS § 686A.310 and breach of the implied covenant of good faith and fair dealing— are both non-contractual claims. Accordingly, the Court denies TIG's Motion to Bifurcate as moot.

## CONCLUSION

Accordingly, and for good cause appearing,

IT IS HEREBY ORDERED that Defendants' Motion for Summary Judgment (# 12) is GRANTED as to Plaintiff's claim for breach of contract and request for declaratory relief and DENIED as to Plaintiff's claim for unfair claim practices and for breach of the implied covenant of good faith and fair dealing.

IT IS ALSO ORDERED that Plaintiff's Countermotion for Summary Judgment (# 15) is DENIED.

IT IS ALSO ORDERED that Defendant's Motion to Bifurcate Trial (# 13) is DENIED as moot.