137 Nev., Advance Opinion 66

# IN THE SUPREME COURT OF THE STATE OF NEVADA

ZURICH AMERICAN INSURANCE COMPANY; AND AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY,
Appellants,
vs.
IRONSHORE SPECIALTY INSURANCE COMPANY,
Respondent.

No. 81428



FILED

OCT 28 2021

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY
CHIEF DEPUTY CLERK

Certified questions under NRAP 5 concerning the allocation of burdens of proof for the applicability of an exception to an exclusion in an insurance policy. United States Court of Appeals for the Ninth Circuit; Marsha S. Berzon and Sandra S. Ikuta, Circuit Judges, and Ivan L.R. Lemelle, District Judge.

*Questions answered.*

Morales Fierro & Reeves and William C. Reeves, Las Vegas,
for Appellants.

Morison & Prough, LLP, and William Campbell Morison, Walnut Creek, California,
for Respondent.

BEFORE THE SUPREME COURT, EN BANC.

21-31027

*OPINION*

By the Court, HERNDON, J.:

Two federal district courts issued conflicting decisions regarding whether, in Nevada, the insured or the insurer has the burden of proving that an exception to an exclusion of coverage provision applies. Those cases were appealed to the Ninth Circuit Court of Appeals, and that court certified the following questions to this court:

> Whether, under Nevada law, the burden of proving the applicability of an exception to an exclusion of coverage in an insurance policy falls on the insurer or the insured? Whichever party bears such a burden, may it rely on evidence extrinsic to the complaint to carry its burden, and if so, is it limited to extrinsic evidence available at the time the insured tendered the defense of the lawsuit to the insurer?

We conclude that the burden of proving the applicability of an exception to an exclusion for coverage in an insurance policy falls on the insured. We further conclude that the insured may rely on any extrinsic evidence that was available to the insurer at the time the insured tendered the defense to the insurer.

*FACTS AND PROCEDURAL BACKGROUND*

Throughout the 2000s, thousands of homes in Nevada were built by subcontractors under the direction of several development companies.[1] During that period, these subcontractors were insured by appellants Zurich American Insurance Company and American Guarantee

---

[1]These facts are drawn from the Ninth Circuit's order certifying these questions to this court. *See Zurich Am. Ins. Co. v. Ironshore Specialty Ins. Co.*, No. 18-16937 (Order Certifying Question to the Nevada Supreme Court, July 2, 2020).

 

and Liability Insurance Company (collectively, Zurich). After the work on the homes was completed, the subcontractors switched insurers, obtaining insurance from respondent Ironshore Specialty Insurance Company (Ironshore). Ironshore's policy insured the subcontractors against damages attributed to bodily injury or property damage that occurred during the new policy period. The policy provides that if the insured becomes legally obligated to pay damages because of bodily injury or property damage that qualifies under the policy, Ironshore will pay those sums. It further provides that Ironshore will have the right and duty to defend the insured if the suit seeks damages to which the policy applies. The policy applies only if the bodily injury or property damage is caused by an occurrence within the coverage territory and applicable policy period.

The Ironshore policy contains a "Continuous or Progressive Injury or Damage Exclusion" that modifies the insurance coverage provided under the policy. The exclusion provides that the policy does not apply to any existing bodily injury or property damage, except for "sudden and accidental" property damage:

> This insurance does not apply to any "bodily injury" or "property damage" . . . which first existed, or is alleged to have first existed, prior to the inception of this policy. "Property damage" from "your work[,]" . . . or the work of any additional insured, performed prior to policy inception will be deemed to have first existed prior to the policy inception, unless such "property damage" is sudden and accidental and takes place within the policy period.

Between 2010 and 2013, homeowners who had purchased homes within these development projects brought 14 construction defect lawsuits against the developers in Nevada state court, alleging the

properties were damaged from construction defects.[2] The developers then sued the subcontractors as third-party defendants. The underlying lawsuits made no specific allegations describing when or how the property damage occurred. The subcontractors tendered defense to Zurich, who agreed to defend them. Zurich sent tender letters to Ironshore requesting indemnification and defense. Ironshore investigated the claims and disclaimed coverage pursuant to the exclusion provision in its insurance policy, claiming that the property damage had occurred due to faulty work that predated the commencement of the policy. Zurich settled claims against the subcontractors and then, in *Nevada Zurich I*, sued Ironshore in federal court seeking contribution and indemnification for the defense and settlement costs, as well as a declaration that Ironshore had owed a duty to defend the subcontractors against the underlying lawsuits. *Assurance Co. of Am. v. Ironshore Specialty Ins. Co. (Nevada Zurich I)*, No. 2:15-cv-00460-JAD-PAL, 2017 WL 3666298, at *1 (D. Nev. Aug. 24, 2017). Ironshore moved for summary judgment, arguing that it had no duty to defend because there was no potential for coverage under the terms of the policy. *Id.*

The federal district court granted summary judgment in favor of Ironshore.[3] *Id.* The court rejected the argument that the "sudden and

---

[2]Homeowners also sued a different subcontractor, RAMM Corp, in a fifteenth lawsuit. Zurich expressly waived any argument with regard to the district court's ruling in that suit, so it is not relevant to this case.

[3]Because the district court granted summary judgment in favor of Ironshore and held that it did not owe a duty to defend, the district court did not address the narrower duty to indemnify. Thus, the appeal that precipitated the certified questions posed to this court does not directly implicate the duty to indemnify.

accidental" exception to the exclusion of the coverage applied, reasoning that none of the complaints in the underlying lawsuits alleged that the damage occurred suddenly, and that without any evidence to support such an allegation, Zurich failed to carry its burden. *Id.* at *3. In issuing this holding, the court implicitly concluded that the *insured* has the burden of establishing that an exception to an exclusion applies.[4] *Id.* The court also assumed that Zurich could have introduced extrinsic evidence to satisfy its burden, but it did not directly address the question. *Id.*

Around the same time, another federal district court, in *Assurance Co. of America v. Ironshore Specialty Insurance Co. (Nevada Zurich II)*, No. 2:13-cv-2191-GMN-CWH, 2015 WL 4579983 (D. Nev. July 29, 2015), reached a different conclusion in a substantially identical case.[5] The judge in that case concluded that Ironshore owed a duty to defend because the underlying complaints "did not specify when the alleged property damage occurred and did not contain sufficient allegations from which to conclude that the damage was not sudden and accidental." *Id.* at

---

[4]This court has treated an insurance company seeking indemnification from another potentially liable insurance company in the same manner as the insured. *See United Nat'l Ins. Co. v. Frontier Ins. Co.*, 120 Nev. 678, 681-83, 99 P.3d 1153, 1155-56 (2004) (treating the insured and the participating insurer identically).

[5]A motion for reconsideration of this decision was denied, and the Ninth Circuit deferred submission on it. *Nevada Zurich II*, No. 2:13-cv-2191-GMN-CWH, 2016 WL 1169449 (D. Nev. Mar. 22, 2016), *submission deferred sub nom. Zurich Am. Ins. Co. v. Ironshore Specialty Ins. Co.*, No. 18-16857 (9th Cir. April 14, 2020). Of note, although the district court case that was ultimately appealed to the Ninth Circuit in the instant case, *Nevada Zurich I*, was filed later than *Nevada Zurich II*, the final judgment in *Nevada Zurich I* was ultimately entered first. Thus, the Ninth Circuit has assigned numerals accordingly. We use the same titles for the purpose of clarity.

*5. The *Nevada Zurich II* court concluded that Ironshore failed to satisfy its burden of proving that the exception to the exclusion did not apply, implicitly concluding that the *insurer* had the burden of proving the nonapplicability of the exception to the exclusion. *Id.* at *10. The *Nevada Zurich II* court also assumed that extrinsic evidence was admissible but did not address the issue directly.

In light of the outcome in *Nevada Zurich II*, Zurich in *Nevada Zurich I* filed a Federal Rule of Civil Procedure 60(b) motion seeking relief from the judgment in the original case. The motion was denied, and Zurich timely appealed. The Ninth Circuit certified these questions to this court and stayed Zurich's appeal pending this court's resolution of the certified questions. The Ninth Circuit also stayed Ironshore's appeal of *Nevada Zurich II* in a concurrently filed order. *Zurich Am. Ins. Co. v. Ironshore Specialty Ins. Co.*, No. 18-16857 (Order, 9th Cir. July 2, 2020). We accepted the certified questions because we agree that they present issues of first impression in this state.

## DISCUSSION

### Standard of review

We only accept certification of "questions of law." NRAP 5. We decide those questions of law de novo, *see, e.g., Nev. Dep't of Corr. v. York Claims Servs., Inc.*, 131 Nev. 199, 203, 348 P.3d 1010, 1013 (2015), in accordance with the purpose of a certified question, which is to clarify our state's law when "there is no controlling precedent," *see* NRAP 5(a). "[T]his court's review is limited to the facts provided by the certifying court, and we must answer the questions of law posed to us based on those facts." *In re Fontainebleau Las Vegas Holdings*, 127 Nev. 941, 953, 267 P.3d 786, 793 (2011).

*The insured has the burden to prove the duty to defend*

"In Nevada, insurance policies [are] treated like other contracts, and thus, legal principles applicable to contracts generally are applicable to insurance policies." *Century Sur. Co. v. Andrew*, 134 Nev. 819, 821, 432 P.3d 180, 183 (2018). When reading a provision of an insurance policy, the court's interpretation "must include reference to the entire policy[, which will] be read as a whole in order to give reasonable and harmonious meaning to the entire policy." *Siggelkow v. Phoenix Ins. Co.*, 109 Nev. 42, 44, 846 P.2d 303, 304 (1993). Under an insurance policy, the insurer owes two contractual duties to the insured: the duty to defend and the duty to indemnify. *Andrew*, 134 Nev. at 822, 432 P.3d at 183. Only the duty to defend is at issue in this case. *See supra* note 3.

The insurer "bears a duty to defend its insured whenever it ascertains facts which give rise to the potential of liability under the policy." *United Nat'l Ins. Co. v. Frontier Ins. Co.*, 120 Nev. 678, 687, 99 P.3d 1153, 1158 (2004) (quoting *Gray v. Zurich Ins. Co.*, 419 P.2d 168, 177 (Cal. 1966)). Conversely, "[t]here is no duty to defend where there is no *potential* for coverage." *United Nat'l*, 120 Nev. at 686, 99 P.3d at 1158 (internal quotations omitted). "If there is any doubt about whether the duty to defend arises, this doubt must be resolved in favor of the insured." *Id.* at 687, 99 P.3d at 1158. "However, the duty to defend is not absolute. A potential for coverage only exists when there is arguable or possible coverage." *Id.* (internal citations and quotations omitted). This court has yet to speak directly to the issue of whether the insurer or the insured has the burden of proving that the exception to an exclusion of coverage applies when determining the duty to defend.

SUPREME COURT
OF
NEVADA

(O) 1947A

7

*Current trends place the burden of proof on the insured*

"Courts in many jurisdictions have concluded that the insured bears the burden of proving the sudden and accidental exception" to an exclusion of coverage. Barry R. Ostrager & Thomas R. Newman, *Handbook on Insurance Coverage Disputes* § 23.02[d] (20th ed. 2020); *see also* Plitt, Maldonado, Rogers, & Plitt, *Couch on Insurance* § 254:13 (3d ed. 2021) ("The trend clearly appears . . . to place the burden on insureds to prove that an exception to an exclusion applies to restore coverage.") (collecting cases). We refer to this approach as the majority rule. The minority rule, which places the burden on the insurer, has been outright rejected by state courts that have ruled subsequent to certain federal decisions predicting the state would adopt the minority rule; these states held that the federal decisions were incorrect in their predictions that they would adopt the minority approach and adopted the majority approach instead.[6]

Many courts that adopted the majority approach have reasoned that because the insured generally bears the initial burden of establishing a possibility of coverage, and the exception grants coverage where there otherwise would be none, the insured therefore bears the burden. For example, the Court of Appeals of Oregon stated that insurance policy provisions can generally be sorted into two categories, "provisions that

---

[6]*See, e.g., New Castle County v. Hartford Accident & Indem. Co.*, 933 F.2d 1162, 1182 (3d Cir. 1991) (predicting that the Delaware high court would impose burden on insurer), *and E.I. du Pont de Nemours & Co. v. Allstate Ins. Co.*, 693 A.2d 1059, 1061 (Del. 1997) (adopting the majority rule); *see also New York v. Blank*, 27 F.3d 783, 788-89 (2d Cir. 1994) (predicting that the New York high court would impose burden on insurer), *and Ment Bros. Iron Works Co. v. Interstate Fire & Cas. Co.*, 702 F.3d 118, 122 (2d Cir. 2012) (recognizing abrogation of *Blank* by *Northville Indus. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 679 N.E.2d 1044, 1048 (N.Y. 1997) (adopting approach that burden is on insured to establish exception to exclusion applies)).

grant coverage and provisions that limit or exclude coverage. The exception at issue, which provides coverage that otherwise would not exist . . . , logically falls in the 'coverage' category—a category in which, under the common law, an insured has the burden of proof." *Employers Ins. of Wausau, a Mut. Co. v. Tektronix, Inc.*, 156 P.3d 105, 120 (Or. Ct. App. 2007), *pet. for review denied*, 169 P.3d 1268 (Or. 2007). *See also E.I. du Pont de Nemours v. Admiral Ins. Co.*, 711 A.2d 45, 53 (Del. 1995) (noting that the usual justification for putting the "burden on the insureds is the exception to the exclusion creates coverage where it would not otherwise exist. Because the burden is on the insureds to prove the claim falls within the scope of coverage, the insureds must prove coverage is revived through applying the exclusion's exception"); *Northville Indus. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 679 N.E.2d 1044, 1049 (N.Y. 1997) ("[s]hifting the burden to establish the exception conforms with an insured's general duty to establish coverage where it would otherwise not exist").

In *Aydin Corp. v. First State Insurance Co.*, the Supreme Court of California considered a "sudden and accidental" exception in a duty to indemnify case. 959 P.2d 1213, 1217-18 (Cal. 1998). In contemplating whether the insured or the insurer bore the burden of proving the applicability of the exception, the California Supreme Court noted that it was "guided by the familiar principle that the provision of an insurance policy, like the provisions of any other contract, must be construed in the context of the policy as a whole." *Id.* at 1217. It concluded that "[r]ead in the context of" the broad exclusionary language in the policy, "the 'sudden and accidental' exception serves to 'reinstate coverage' where it would otherwise not exist." *Id.* Accordingly, it determined that because the insured bears the initial burden of establishing coverage under an insurance policy, it follows that the insured must also prove that the

exception affords coverage after an exclusion is triggered. *Id.* at 1218 (citing *St. Paul Fire & Marine Ins. v. Warwick Dyeing*, 26 F.3d 1195, 1200 (1st Cir. 1994)).[7]

Nevada law provides that an insurance policy should be read according to general contract principles. *Andrew*, 134 Nev. at 821, 432 P.3d at 183. Furthermore, Nevada law requires that the insured establish coverage under an insurance policy, whether claiming a duty to indemnify or a duty to defend. *Nat'l Auto. & Cas. Ins. Co. v. Havas*, 75 Nev. 301, 303, 339 P.2d 767, 768 (1959) (recognizing that the insured has the initial burden of proving that there is "a loss apparently within the terms of the policy"); *see also Turk v. TIG Ins. Co.*, 616 F. Supp. 2d 1044, 1050 (D. Nev. 2009) (recognizing that the insured bore "the initial burden of establishing the potential for coverage under the [insurance policies]"). We hold that the majority rule, which places the burden on the insured to, in essence, re-

---

[7]This court recognizes that *Aydin* expressly refused to address the allocation of burdens in duty-to-defend cases. 959 P.2d at 1219 n.6. That said, *Aydin*'s reasoning has been applied to subsequent duty-to-defend cases. *See McMillin Cos. v. Am. Safety Indem. Co.*, 183 Cal. Rptr. 3d 26, 39 n.23 (Ct. App. 2015); *Saarman Constr., Ltd. v. Ironshore Specialty Ins. Co.*, 230 F. Supp. 3d 1068, 1075-76 (N.D. Cal. 2017). We believe that *Aydin*'s reasoning is convincing, yet only to the extent that it explains why the burden of proof should be on the insured when dealing with an exception to a policy exclusion; we do not derive guidance from *Aydin* as to the weight of such a burden. Thus, while we hold that the insured carries the burden of proof, we emphasize again that the extent of the insured's burden is only to prove that there is a *potential* for coverage according to the exception to the exclusion under the policy; not that the exception *does* apply, which would only be required if the insured was seeking to prove that the duty to indemnify was owed.

establish coverage where it would not otherwise exist, accords with these principles.[8]

The majority approach also is in accordance with basic tenets of evidence law in Nevada. In *Rivera v. Philip Morris, Inc.*, this court noted that the term "burden of proof" describes both the "burden of production" and the "burden of persuasion." 125 Nev. 185, 190-91, 209 P.3d 271, 274-75 (2009). "The party that carries the burden of production must establish a prima facie case." *Id.* at 190-91, 209 P.3d at 274. "The burden of persuasion rests with one party throughout the case and determines which party must produce sufficient evidence to convince a judge that a fact has been established." *Id.* at 191, 209 P.3d at 275 (internal quotations omitted). In Nevada, the burdens of production and persuasion rest with the insured, who has the initial burden of proving that the claim falls within policy coverage. *Nat'l Auto.*, 75 Nev. at 303, 339 P.2d at 768; *Turk*, 616 F. Supp. 2d at 1050. The assignment of the burden of proof to the insured to prove that the claim potentially falls within the exception to the exclusion, which in effect re-establishes coverage, is in alignment with these principles as well.

Therefore, this court adopts the majority rule regarding burdens of proof for exceptions to an exclusion and concludes that the burden is on the insured, not the insurer, to prove the potential that an exception to an exclusion applies when determining whether the insurer

---

[8]While Zurich contends this court must adopt the minority rule because a Florida federal court, applying Nevada law and considering similar facts in regard to the same insurance policy language, applied the minority rule, we conclude that case is not persuasive. *See KB Home Jacksonville LLC v. Liberty Mut. Fire Ins. Co.*, No. 3:18-cv-371-J-34MCR, 2019 WL 4228602, at *9 (M.D. Fla. Sept. 5, 2019), *appeal dismissed*, No. 19-13987-GG, 2020 WL 6053276 (11th Cir. June 11, 2020).

owes a duty to defend. This court recognizes that although the majority of states have adopted this approach, some of them have adopted it specifically in the context of determining the duty to indemnify, *see, e.g., Aydin*, 959 P.2d at 1217-18, which is narrower than the duty to defend. *United Nat'l*, 120 Nev. at 686, 99 P.3d at 1158. Indeed, the duty to defend arises when there is a *potential* for coverage, *id.* at 687, 99 P.3d at 1158, whereas the duty to indemnify arises when the insured's activity and the resulting damage *actually* fall within the policy's coverage, *id.* at 686, 99 P.3d at 1158. We recognize that the burden is on the insured to prove the duty to indemnify, as well as the duty to defend, but emphasize that it is not this court's intention to erode the duty to defend by heightening the insured's burden of proof. This court reiterates that the weight of proof needed to fulfill the burden of proving a duty to defend is lighter than the duty to indemnify—only the *potential* for coverage must be proven.

*The insured may use extrinsic facts available to the insurer at the time of tender to prove the insurer had a duty to defend*

An insurer "bears a duty to defend its insured whenever it ascertains facts which give rise to the potential of liability under the policy." *United Nat'l*, 120 Nev. at 687, 99 P.3d at 1158 (quoting *Gray*, 419 P.2d at 177). Thus, under Nevada law, an insured may present such extrinsic facts to the insurer, and rely upon them, in order to argue that the insurer owes a duty to defend as within an exception to an exclusion. *Id.*

That said, Nevada law is silent as to what particular extrinsic facts an insured may use to fulfill its burden. Neighboring California has held that "[a]n insurer's duty to defend must be analyzed and determined on the basis of any *potential* liability arising from facts available to the insurer from the complaint or other sources available to it at the time of the tender of defense." *Waller v. Truck Ins. Exch., Inc.*, 900 P.2d 619, 632 (Cal.

1995) (quoting *CNA Cas. of Cal. v. Seaboard Sur. Co.*, 222 Cal. Rptr. 276, 278-79 (Ct. App. 1986)). We have already recognized that "as a general rule, an insurer's duty to defend is triggered whenever the potential for indemnification arises, and it continues until this potential for indemnification ceases." *Benchmark Ins. Co. v. Sparks*, 127 Nev. 407, 412, 254 P.3d 617, 621 (2011). There is a potential for indemnification, and therefore a duty to defend is owed, whenever "the allegations in the third party's complaint show that there is arguable or possible coverage," or when the insurer "ascertains facts which give rise to the potential of liability under the policy."[9] *Nautilus Ins. Co. v. Access Med., LLC*, 137 Nev., Adv. Op. 10, 482 P.3d 683, 687-88 (2021) (internal quotations omitted). Since the duty to defend must be determined at the outset of litigation based upon the complaint and any other facts available to the insurer, we hold that the insured may use extrinsic facts that were available to the insurer at the

---

[9]In *United National*, we wrote that an insurer has a duty to defend "whenever it ascertains facts which give rise to the potential of liability under the policy." 120 Nev. at 687, 99 P.3d at 1158 (citing *Gray*, 419 P.2d at 177). We also wrote that "[d]etermining whether an insurer owes a duty to defend is achieved by comparing the allegations of the complaint with the terms of the policy." *Id.* (citing *Hecla Min. Co. v. N.H. Ins. Co.*, 811 P.2d 1083, 1089-90 (Colo. 1991)). We note that *Hecla Mining* was stating that the *insurer* should not be allowed to "evad[e] coverage by filing a declaratory judgment action when the complaint against the insured is framed in terms of liability coverage contemplated by the insurance policy." 811 P.2d at 1090. Thus, we take this opportunity to clarify that the insured, but not the insurer, is allowed to introduce extrinsic evidence at the duty-to-defend stage. *See Andrew*, 134 Nev. at 822 n.4, 432 P.3d at 184 n.4 ("[A]s a general rule, facts outside of the complaint cannot justify an insurer's refusal to defend its insured."); *Woo v. Fireman's Fund Ins. Co.*, 164 P.3d 454, 459 (Wash. 2007) ("The insurer may not rely on facts extrinsic to the complaint to deny the duty to defend—it may do so only to trigger the duty.").

time it tendered its defense to prove there was a potential for coverage under the policy and, therefore, a duty to defend.

## CONCLUSION

We answer the certified questions as follows: (1) the burden of proving the exception to an exclusion is on the insured, not the insurer; and (2) in fulfilling its burden to prove the exception to an exclusion applies, the insured may utilize any extrinsic facts that were available to the insurer at the time the insured tendered defense to the insurer.

_____, J.
Herndon

We concur:

_____, C.J.
Hardesty

_____, J.
Parraguirre

_____, J.
Stiglich

_____, J.
Cadish

_____, J.
Silver

_____, J.
Pickering

SUPREME COURT
OF
NEVADA

(O) 1947A

14