JOE RIVERA, INDIVIDUALLY AND AS GUARDIAN AD LITEM FOR JOSEPH RIVERA, V, AND JENICA RIVERA, MINORS, AND JOE RIVERA AS SPECIAL ADMINISTRATOR TO THE ESTATE OF PAMELA RIVERA, APPELLANTS, v. PHILIP MORRIS, INCORPORATED, A VIRGINIA CORPORATION, RESPONDENT.

No. 49396

June 4, 2009                                          209 P.3d 271

---

*Gillock, Markley & Killebrew, PC*, and *Gerald I. Gillock*, Las Vegas; *Johnson Flora, PLLC*, and *Mark A. Johnson*, Seattle, Washington, for Appellants.

*Jones Vargas* and *Clark V. Vellis* and *John P. Desmond*, Reno; *Munger, Tolles & Olson, LLP*, and *Gregory Stone*, Los Angeles, California; *Shook, Hardy & Bacon, LLP*, and *Craig Proctor* and *William A. Yoder*, Kansas City, Missouri, for Respondent.

# OPINION

By the Court, SAITTA, J.:

The United States District Court, District of Nevada, has certified the question of whether Nevada law recognizes a heeding presumption in strict product liability failure-to-warn cases. A heeding presumption is a rebuttable presumption that allows a factfinder to presume that the injured plaintiff would have heeded an adequate warning if one had been given. Thus, it shifts the burden of proving the element of causation from the plaintiff to the manufacturer. We exercise our discretion to answer this question and conclude that Nevada law does not recognize a heeding presumption.

In Nevada, it is well-established law that in strict product liability failure-to-warn cases, the plaintiff bears the burden of production and must prove, among other elements, that the inadequate warning caused his injuries. Because a heeding presumption shifts the burden of proving causation from the plaintiff to the manufacturer, it is contrary to Nevada law. Rather than demanding that the plaintiff prove

that the inadequate warning caused his injuries, a heeding presumption requires the manufacturer to rebut the presumption that the plaintiff would have heeded an adequate warning by demonstrating that a different warning would not have changed the plaintiff's actions. While other jurisdictions have permitted this shifting of the burden of production, we are unwilling to do so.

## FACTS AND PROCEDURAL HISTORY

Appellant Joe Rivera brought a wrongful death suit against respondent Philip Morris, Inc., on behalf of the estate and family of his wife, Pamela Rivera. Pamela began smoking in 1969, before the federal government required cigarette labels to include warnings that specifically addressed the health risks of smoking, including its causing lung cancer. Rather, from 1966 until 1985, cigarette labels warned only of general health risks. Beginning in 1985, the warnings were required to be more explicit, expressly warning of smoking's connection to lung cancer, heart disease, and emphysema, as well as the risks of smoking during pregnancy. Pamela smoked until she died in 1999 of brain cancer, which her estate alleges was caused by lung cancer.

Rivera filed a complaint for damages against Philip Morris in the state district court, which Philip Morris removed to the federal district court. Rivera's initial complaint set forth strict product liability and fraud claims. Rivera based the strict product liability claim on his contention that, by producing and selling cigarettes, Philip Morris breached its duty to Pamela not to manufacture and sell a product that was defective and unreasonably dangerous to her. By selling a defective and unreasonably dangerous product to Pamela, Rivera claimed that Philip Morris caused her death. The federal district court granted summary judgment on all claims in favor of Philip Morris on the grounds that the strict liability claim was preempted by the Federal Cigarette Labeling and Advertising Act of 1965, and that the fraud claims were either preempted by the same Act or, alternatively, that there was a lack of evidence that Pamela would have stopped smoking if Philip Morris had disclosed material information regarding the health effects of smoking. Rivera appealed to the United States Court of Appeals for the Ninth Circuit.

In *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142 (9th Cir. 2005), the Ninth Circuit affirmed summary judgment on the fraud claims but reversed the district court on the strict product liability failure-to-warn claim. *Id.* at 1154-55. The Ninth Circuit first determined that none of Rivera's claims were preempted by federal law. *Id.* at 1146-50. The court decided that summary judgment was inappropriate on the strict product liability claim because the question of whether it was common knowledge when Pamela began smoking in

1969 that cigarette smoking caused lung cancer was a question of fact for a jury to decide. *Id.* at 1153. Further, the Ninth Circuit concluded that summary judgment was also inappropriate because whether a typical consumer in 1969 knew that cigarettes were addictive was also a question of fact for a jury. *Id.* at 1153-54. Accordingly, the Ninth Circuit affirmed in part and remanded the case for further proceedings solely on Rivera's strict product liability failure-to-warn claim. *Id.* at 1155.

On remand, Rivera filed a motion for partial summary judgment, asking the federal district court to recognize, as fact, certain assertions. Philip Morris filed a cross-motion for summary judgment on the strict product liability failure-to-warn claim. Philip Morris argued that Rivera could not prove that the alleged failure-to-warn caused Pamela's injuries because the record was void of any evidence that Pamela would have acted differently had Philip Morris provided additional information or warnings. In opposition, Rivera argued that the federal district court should apply a heeding presumption.

After the hearing on the parties' motions, the federal district court entered an order that granted, in part, Rivera's motion for partial summary judgment, by recognizing that Philip Morris cigarettes have been and are addictive and that they have caused and do cause cancer. The order also denied Philip Morris' motion for summary judgment, finding that Philip Morris had failed to overcome the presumption that Pamela would have heeded additional information and warnings had Philip Morris provided them.

Philip Morris moved for clarification and reconsideration of the federal district court's decision and for certification, pursuant to NRAP 5, of whether Nevada law recognizes a heeding presumption in strict liability failure-to-warn cases. The federal district court denied Philip Morris' motions. The parties then joined in a motion to certify the heeding presumption question to this court, which the federal district court granted.

## DISCUSSION

### *NRAP 5 certification is appropriate*

At the outset, we address the threshold issue of whether the certified question should be answered by this court. Pursuant to NRAP 5, this court has the discretion to answer questions certified by a federal court. To decide whether to exercise that discretion, this court looks at whether ''(1) the certified question's answer may be determinative of part of the federal case, (2) controlling Nevada precedent exists, and (3) the answer will help settle important ques-

tions of law." *Federal Ins. v. Am. Hardware Mut. Ins.*, 124 Nev. 319, 322, 184 P.3d 390, 392 (2008).

Whether Nevada law recognizes a heeding presumption is a matter of first impression. Our answer will determine whether plaintiffs in strict product liability failure-to-warn cases will continue to bear the burden of proving causation throughout the entire case or whether that burden will first shift to the manufacturers who must rebut it. In this case, our answer may also be determinative of the federal case. If this court declines to adopt a heeding presumption, it is unlikely that Rivera can prove causation because the only evidence he has presented that Pamela would have heeded a more specific warning is speculative and, therefore, likely inadmissible. Accordingly, we answer the certified question.

*Nevada law and public policy do not support a heeding presumption*

*Nevada law*

In Nevada, when bringing a strict product liability failure-to-warn case, the plaintiff carries the burden of proving, in part, that the inadequate warning caused his injuries. *Sims v. General Telephone & Electric*, 107 Nev. 516, 524, 815 P.2d 151, 156 (1991), *overruled on other grounds by Tucker v. Action Equip. and Scaffold Co.*, 113 Nev. 1349, 1356 n.4, 951 P.2d 1027, 1031 n.4 (1997), *overruled on other grounds by Richards v. Republic Silver State Disposal*, 122 Nev. 1213, 148 P.3d 684 (2006). Rivera admits that a heeding presumption would shift this burden from the plaintiff to the manufacturer, but argues that a heeding presumption is concordant with Nevada law because it is a rebuttable presumption that initially shifts the burden of proving causation to the manufacturer but shifts the burden back to the plaintiff upon the manufacturer rebutting the claim. We reject Rivera's argument. Instead, we conclude that shifting the burden of proving causation to the manufacturer in a strict product liability case, even if it is a temporary shift, is contrary to this state's law, as well as public policy.

At the outset, we note that cases are governed, in part, by evidentiary burdens and determining which party carries these burdens. The determination of which party caries a burden is critical because it can impact the outcome of a case. The term "burden of proof" is an umbrella phrase that describes two related, but separate, burdens. *See Northwest Pipeline Corp. v. Adams County*, 131 P.3d 958, 960 (Wash. Ct. App. 2006). First, there is the burden of production. The party that carries the burden of production must establish a prima

facie case. *See Aguilar v. Atlantic Richfield Co.*, 24 P.3d 493, 510 (Cal. 2001); *Cuzze v. Univ. & Cmty. Coll. Sys. of Nev.*, 123 Nev. 598, 602, 172 P.3d 131, 134 (2007); *Parsons v. State*, 116 Nev. 928, 937 n.7, 10 P.3d 836, 841 n.7 (2000). The burden of production may be switched from one party to another by a presumption. *See* NRS 47.180;[3] *Nevada Power Co. v. Public Util. Comm'n*, 122 Nev. 821, 835, 138 P.3d 486, 495-96 (2006). Second, there is the burden of persuasion. The burden of persuasion rests with one party throughout the case and "determines which party must produce sufficient evidence to convince a judge that a fact has been established." 29 Am. Jur. 2d *Evidence* § 171 (2008) (citing *Hurley v. Hurley*, 754 A.2d 1283, 1286 (Pa. Super. Ct. 2000)); *see Northwest Pipeline Corp.*, 131 P.3d at 960.

In strict product liability cases, the plaintiff carries both the burden of production and the burden of persuasion. *See Shoshone Coca-Cola v. Dolinski*, 82 Nev. 439, 443, 420 P.2d 855, 857-58 (1966). To successfully prove a failure-to-warn case, a plaintiff must produce evidence demonstrating the same elements as in other strict product liability cases: "(1) the product had a defect which rendered it unreasonably dangerous, (2) the defect existed at the time the product left the manufacturer, and (3) the defect caused the plaintiff's injury." *See Fyssakis v. Knight Equipment Corp.*, 108 Nev. 212, 214, 826 P.2d 570, 571 (1992). A product may be found unreasonably dangerous and defective if the manufacturer failed to provide an adequate warning. *See Yamaha Motor Co. v. Arnoult*, 114 Nev. 233, 238-39, 955 P.2d 661, 665 (1998). Further, the burden of proving causation can be satisfied in failure-to-warn cases by demonstrating that a different warning would have altered the way the plaintiff used the product or would have "prompted plaintiff to take precautions to avoid the injury." *See Riley v. American Honda Motor Co., Inc.*, 856 P.2d 196, 198 (Mont. 1993).

A heeding presumption, which Rivera seeks this court to adopt, departs from well-settled and established Nevada law. Instead of requiring that the plaintiff prove each element of a strict product liability case, a heeding presumption removes the plaintiff's responsibility to carry the initial burden of production as to the element of causation. *See Riley*, 856 P.2d at 199; *Seley v. G. D. Searle & Co.*, 423 N.E.2d 831, 838 (Ohio 1981); *Technical Chemical Company v. Jacobs*, 480 S.W.2d 602, 606 (Tex. 1972). A heeding presumption

[3]We note that since its adoption in 1971, NRS 47.180 has never been amended.

"allow[s] the fact-finder to presume that the person injured by product use would have heeded an adequate warning, if given." *Golonka v. General Motors Corp.*, 65 P.3d 956, 967 (Ariz. Ct. App. 2003); *Bushong v. Garman Co.*, 843 S.W.2d 807, 811 (Ark. 1992). Therefore, a heeding presumption shifts the burden of production from the plaintiff to the manufacturer, who must rebut the presumption by proving that the plaintiff would not have heeded a different warning. *Golonka*, 65 P.3d at 971; *Bushong*, 843 S.W.2d at 811; *see* NRS 47.180.

Rivera argues that this court's decisions in *Sims*, 107 Nev. 516, 815 P.2d 151, and *Stackiewicz v. Nissan Motors Corp.*, 100 Nev. 443, 686 P.2d 925 (1984), support our recognizing a heeding presumption. For the reasons set forth below, we reject this argument.

This court has consistently stated that the plaintiff must prove the element of causation. *Shoshone Coca-Cola*, 82 Nev. at 443, 420 P.2d at 857-58. In *Sims*, we concluded that the district court had improperly granted the manufacturer's motion for summary judgment because the fact-finder could have found that the evidence indicated that Sims would have heeded an adequate warning, if one was given. 107 Nev. at 524, 815 P.2d at 156. Notably, this court did not reverse because the fact-finder could *presume* that Sims would have followed an adequate warning. Instead, this court stated that the *evidence* could demonstrate that he would have adhered to an adequate warning. *See id.*

Similarly, in *Stackiewicz*, we concluded that the district court improperly granted the manufacturer's motion for a judgment notwithstanding the verdict because there was circumstantial evidence that could lead the fact-finder to conclude that the car's defect had caused Stackiewicz's injuries. 100 Nev. at 452, 686 P.2d at 930. Thus, our conclusions in *Sims* and *Stackiewicz* demonstrate this court's steadfast commitment to the principle that the burden of production as to the element of causation rests with the plaintiff in strict product liability cases. Moreover, we emphasize that we did not contemplate switching the burden of production from the plaintiff to the manufacturer in either *Sims* or *Stackiewicz*.

### Restatement (Second) of Torts section 402A, comment j

Rivera next contends that this court should recognize a heeding presumption because this court has adopted the Restatement (Second) of Torts section 402A, comment j, which favors the presumption. We disagree. While this court has cited to the Restatement (Second) of Torts section 402A, comment j, the manner in which we relied on comment j indicates our intention to require the plaintiff in strict product liability failure-to-warn cases to carry the burden of production on the element of causation. Our use of comment j does not support a heeding presumption.

The Restatement (Second) of Torts section 402A governs strict product liability. Restatement (Second) of Torts § 402A (1965). Comment j to section 402A states, in pertinent part, ''[w]here warning is given, the seller may reasonably assume that it will be read and heeded; and a product bearing such a warning, which is safe for use if it is followed, is not in defective condition, nor is it unreasonably dangerous.'' Many courts have interpreted comment j as giving rise to a rebuttable heeding presumption. *See, e.g., Golonka*, 65 P.3d at 968; *Butz v. Werner*, 438 N.W.2d 509, 517 (N.D. 1989).[4]

In *Allison v. Merck and Company*, 110 Nev. 762, 878 P.2d 948 (1994), this court concluded that a drug manufacturer will be liable if it fails to market a vaccine with a proper warning. *Id.* at 774, 878 P.2d at 956. In so determining, this court cited the Restatement (Second) of Torts section 402A, comment j. *See id.* at 774 n.12, 878 P.2d at 956 n.12. We noted that comment j was consistent with our conclusion that a fact-finder could conclude from the evidence that the manufacturer was liable for underwarning the product. *Id.*

However, we did not adopt comment j wholesale. Instead, in citing comment j, we specifically noted that the *evidence* could demonstrate that the manufacturer had not provided a sufficient warning. *Id.* At no point did we imply that comment j supported adopting a presumption that the Allisons would have heeded an adequate warning had one been provided. Therefore, we reject Rivera's argument that this court's discussion of comment j to section 402A of the Restatement (Second) of Torts in *Allison* supports our adoption of a heeding presumption. To the contrary, we conclude that the manner in which we have previously cited to comment j indicates that we will not stray from the principle that the plaintiff carries the burden of production of the element of causation.

Finally, we note that we are not alone in our decision to reject a heeding presumption. *See Riley*, 856 P.2d at 200 (concluding that the adoption of a heeding presumption was inconsistent with Montana's strict product liability failure-to-warn law, which requires the plaintiff to demonstrate that the inadequate warning caused his in-

---

[4]Even though some jurisdictions have adopted a heeding presumption without directly referencing the Restatement (Second) of Torts section 402A, comment j, *see, e.g., Bushong*, 843 S.W.2d at 811; *Cunningham v. Charles Pfizer & Co., Inc.*, 532 P.2d 1377, 1382 (Okla. 1974); *Menard v. Newhall*, 373 A.2d 505, 506-07 (Vt. 1977), this fact does not change our decision to reject Rivera's invitation to adopt a heeding presumption. These courts have applied a heeding presumption in the same way as jurisdictions that reference comment j. Therefore, that some jurisdictions have adopted the heeding presumption without reference to comment j of the Restatement (Second) of Torts does not convince us to depart from the principle that the plaintiff bears the burden of production as to the element of causation in strict product liability cases.

juries); *DeJesus v. Craftsman Machinery Co.*, 548 A.2d 736, 744 (Conn. App. Ct. 1988) (concluding that there is no presumption that an inadequate warning was the proximate cause of the plaintiff's injuries because the plaintiff bears the burden of proving proximate cause); *Harris v. International Truck and Engine*, 912 So. 2d 1101, 1109 (Miss. Ct. App. 2005) (declining to adopt the heeding presumption because the Mississippi Supreme Court had an opportunity to do so but did not, instead noting that the plaintiff bore the burden of proving that his injury had been caused by his following the inadequate warning). We agree with these jurisdictions and now affirm the requirement that the plaintiff bear the burden of proving causation in strict liability cases.

For all of these reasons, we conclude that Nevada law does not support recognizing a heeding presumption. It is a firmly rooted part of Nevada law that the plaintiff in a strict product liability case bears the burden of proving all the elements of his case, including causation. Therefore, we decline Rivera's invitation to depart from this standard.

### Public policy

Rivera further argues that public policy would be served by Nevada adopting a heeding presumption. We disagree.

Jurisdictions that have adopted a heeding presumption have cited public policy as a reason for their decision. *See, e.g.*, *Golonka*, 65 P.3d at 969. For instance, jurisdictions have noted that "[b]y easing the burden of proving causation, '[t]he use of the heeding presumption provides a powerful incentive for manufacturers to abide by their duty to provide adequate warnings.'" *Golonka*, 65 P.3d at 969 (alteration in original) (quoting *Coffman v. Keene Corp.*, 628 A.2d 710, 718 (N.J. 1993)). Courts have also noted that the heeding presumption "'"serves to reinforce the basic duty to warn—to encourage manufacturers to produce safer products, and to alert users of the hazards arising from the use of those products through effective warnings."'" *See House v. Armour of America, Inc.*, 929 P.2d 340, 347 (Utah 1996) (quoting *House v. Armour of America, Inc.*, 886 P.2d 542, 553 (Utah Ct. App. 1996) (quoting *Coffman*, 628 A.2d at 718)).

We have held that the public policy behind strict product liability law is that manufacturers and distributors of defective products should be held responsible for injuries caused by these products. *See, e.g.*, *Allison*, 110 Nev. at 769, 878 P.2d at 953. However, we conclude that public policy is best served by our rejecting a heeding presumption. As noted in the Restatement (Third) of Torts, comment

j to section 402A of the Restatement (Second) of Torts implies that a manufacturer can satisfy its duty of making products safe by providing adequate warnings. Restatement (Third) of Torts: Products Liability § 2 cmt. *l* (1998). We find such a result to be untenable. Instead, we strongly adhere to the principle that a manufacturer must make products that are not unreasonably dangerous, no matter what instructions are given in the warning. Therefore, we conclude that it is better public policy not to encourage a reliance on warnings because this will help ensure that manufacturers continue to strive to make safe products. Further, as noted by the *Riley* court, it is not logical to presume that a plaintiff would have heeded an adequate warning, if provided. *See Riley*, 856 P.2d at 200. "[W]arnings are everywhere in the modern world and often go unread or, where read, ignored." *Id.* For these reasons, we conclude that a heeding presumption has no place in our law.

Therefore, because we conclude that neither Nevada law nor public policy militate in favor of adopting a heeding presumption, we answer the certified question in the negative.

## CONCLUSION

Nevada law is clear that a plaintiff bears the burden of proving causation in strict product liability cases. The heeding presumption inappropriately shifts the burden of production from the plaintiff to the manufacturer. Accordingly, because we decline to alter Nevada's established law concerning the plaintiff's burden of proof of causation in strict product liability cases, we answer this certified question in the negative.

HARDESTY, C.J., PARRAGUIRRE, DOUGLAS, CHERRY, and GIBBONS, JJ., concur.