137 Nev., Advance Opinion 42

# IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| MOTOR COACH INDUSTRIES, INC., A DELAWARE CORPORATION, Appellant, vs. KEON KHIABANI AND ARIA KHIABANI, MINORS, BY AND THROUGH THEIR GUARDIAN MARIE-CLAUDE RIGAUD; SIAMAK BARIN, AS EXECUTOR OF THE ESTATE OF KAYVAN KHIABANI, M.D. (DECEDENT); THE ESTATE OF KAYVAN KHIABANI, M.D. (DECEDENT); SIAMAK BARIN, AS EXECUTOR OF THE ESTATE OF KATAYOUN BARIN, DDS (DECEDENT); AND THE ESTATE OF KATAYOUN BARIN, DDS, (DECEDENT), Respondents. | No. 78701 FILED AUG 19 2021 ELIZABETH A. BROWN CLERK OF SUPREME COURT BY_____ CHIEF DEPUTY CLERK |

Appeal from a judgment after a jury verdict in a tort action. Eighth Judicial District Court, Clark County; Adriana Escobar, Judge.

*Affirmed in part, reversed in part, and remanded.*

Lewis Roca Rothgerber Christie LLP and Daniel F. Polsenberg, Joel D. Henriod, and Abraham G. Smith, Las Vegas; Weinberg, Wheeler, Hudgins, Gunn & Dial, LLC, and D. Lee Roberts, Jr., and Howard J. Russell, Las Vegas; Hartline Dacus Barger Dreyer LLP and Darrell L. Barger and Michael G. Terry, Corpus Christi, Texas; Hartline Dacus Barger Dreyer LLP and John C. Dacus and Brian Rawson, Dallas, Texas, for Appellant.

21-24170

Christiansen Law Offices and Peter S. Christiansen and Kendelee L. Works, Las Vegas; Kemp Jones, LLP, and Will Kemp and Eric M. Pepperman, Las Vegas,
for Respondents.

---

BEFORE THE SUPREME COURT, EN BANC.

*OPINION*

By the Court, STIGLICH, J.:

Dr. Kayvan Khiabani was riding a bicycle when he collided with a passing bus and was fatally injured. His estate and surviving family members, respondents in this appeal, sued several defendants, including appellant Motor Coach Industries, Inc. (MCI), the designer and manufacturer of the bus. Each defendant except MCI settled with respondents before trial. At trial, respondents argued that MCI was liable under theories of defective design and failure to warn. The jury returned a verdict for respondents on the failure-to-warn theory. MCI moved for judgment as a matter of law, for a new trial, to alter or amend the judgment to offset the settlement proceeds paid by the other defendants, and to retax costs. The district court denied each of these motions. MCI appeals.

We affirm the district court's denial of MCI's motions for judgment as a matter of law, for a new trial, and to retax costs. We reverse and remand based on the district court's denial of MCI's motion to alter or amend the judgment, however, because MCI was entitled to an offset of the settlement proceeds as MCI and the settling defendants were liable for the same injury. We also take the opportunity presented in this matter to clarify Nevada law on calculating loss-of-support awards, the causation element of failure-to-warn claims, and special verdict forms.

SUPREME COURT
OF
NEVADA

(O) 1947A

## BACKGROUND

*Collision*

In spring 2017, Edward Hubbard was driving a large bus designed and manufactured by MCI on Charleston Boulevard in Las Vegas. At the same time, Khiabani, a successful hand surgeon employed by the University of Nevada, Reno's (UNR) School of Medicine in Las Vegas, was cycling in the same direction in the bicycle lane. Khiabani turned right onto South Pavilion Center Drive, followed by Hubbard, who drove in the rightmost lane. Hubbard did not see Khiabani again until further down the road, when he attempted to overtake the bicycle. According to a witness, the side of the bus came within two to three feet of Khiabani. While the front of the bus passed without incident, Hubbard soon saw Khiabani drifting into the vehicle lane. Although Hubbard immediately turned the bus away in an attempt to avoid impact, Khiabani collided with the side of the bus, slid underneath, and was hit by its rear wheel. Khiabani did not survive the collision.

Khiabani's estate, widow, and children sued various defendants, including MCI, the manufacturers of the helmet Khiabani was wearing and the bicycle he was riding, the company operating the bus, and Hubbard. Good-faith settlements were reached before trial with all defendants except MCI.

*Trial*

Respondents proceeded against MCI on several product-defect theories, including failure to warn of an alleged defect. At trial, respondents argued that the boxy design of the bus caused air displacement that created a suction force on objects in close proximity to the sides of the bus, like bicyclists. This "air blast" effect, according to respondents, pulled Khiabani under the bus and led to his death. Respondents argued that this effect was

both an unreasonably dangerous design defect and an unreasonably dangerous condition against which MCI failed to warn purchasers and drivers of the bus.

To calculate loss-of-support damages, the jury was informed of Khiabani's gross, i.e., pretax, pay. MCI requested that the jury be informed of Dr. Khiabani's net pay instead, on the ground that no earner supports a family with his or her pretax income, but only with what is actually taken home. The district court denied this request.

After the close of respondents' presentation of evidence, MCI moved for judgment as a matter of law, partially on the ground that respondents had not sufficiently proven the causation element of their failure-to-warn theory. The district court denied this motion.

The jury ultimately found MCI liable on the failure-to-warn theory and awarded $18,746,003.62 in damages to respondents. $2,700,000 of that award was for loss of financial support.

*Post-trial*

Thereafter, MCI renewed its motion for judgment as a matter of law. The district court found that many of MCI's arguments were not preserved in its original motion at the close of respondents' presentation of evidence and also rejected the arguments that it found were preserved. The district court taxed MCI with respondents' trial costs. The district court also denied MCI's motion to alter or amend the judgment to offset the settlement proceeds paid by other defendants.

*Alleged new evidence*

At the time of the collision, UNR's medical school in Las Vegas (Khiabani's employer) was in the process of merging with a new medical school under the University of Nevada, Las Vegas and was conducting an audit to facilitate and guide that merger. In April 2018—after trial had

been completed and the verdict returned—the local CBS affiliate published and televised investigative reporting details regarding the UNR medical school and the audit. The reporters had obtained several leaked internal documents and emails and alleged a practice of overbilling fraud. The reporters alleged that, at the time of his death, Khiabani had already lost or was about to lose his job as a result of the findings of that audit. UNR's medical school made a statement largely denying the allegations and emphatically said that the audit did not make findings or conclusions "related to Medicare fraud or abuse."

In light of these developments, MCI asked for limited post-trial discovery, but the district court denied the request. In addition, MCI filed a motion for new trial based on newly discovered evidence: namely, that Khiabani's job and medical license had potentially been in jeopardy. MCI argued that this situation, combined with other factors,[1] suggested that Khiabani's death was not accidental. MCI also argued that the jury's loss-of-financial-support award presupposed that Khiabani's job and earning capacity were stable at the time of his death. In addition to the newly discovered evidence issue, MCI argued that a new trial on the failure-to-warn claim was necessary because the jury was not asked to find causation linking any failure to warn to Khiabani's death and because the award was based on Khiabani's gross income. The district court denied the motion, agreeing with respondents that MCI had every opportunity before trial to seek discovery regarding Khiabani's continued employment and that MCI's other claims lacked merit. MCI appeals.

---

[1]At the time of Dr. Khiabani's death, his wife was undergoing cancer treatment. She has since died.

 

*DISCUSSION*

MCI claims that the district court erred in denying its motions for judgment as a matter of law, for a new trial, to alter or amend the judgment to offset the settlement proceeds paid by other defendants, and to retax costs. We address each in turn.

*Respondents presented sufficient evidence for the causation element of the failure-to-warn claim, and thus the district court properly denied MCI's motions for judgment as a matter of law*

MCI asserts that the district court erred in denying its motion and renewed motion for judgment as a matter of law because respondents presented insufficient evidence of the causation element of their failure-to-warn claim.[2] We review the district court's denial of such motions de novo. *See Nelson v. Heer*, 123 Nev. 217, 223, 163 P.3d 420, 425 (2007).

In Nevada, those bringing a failure-to-warn claim must demonstrate "the same elements as in other strict product liability cases." *Rivera v. Philip Morris, Inc.*, 125 Nev. 185, 191, 209 P.3d 271, 275 (2009). One must show that "(1) the product had a defect which rendered it unreasonably dangerous, (2) the defect existed at the time the product left the manufacturer, and (3) the defect caused the plaintiff's injury." *Id.* In such cases, the lack of a warning functions as the relevant "defect." *See id.* "[S]trict liability may be imposed even though the product is faultlessly

---

[2]Respondents contend that many of the issues raised by MCI in this appeal were not preserved in MCI's original NRCP 50(a) motion. We disagree. This court has long recognized, in relation to preserving error under NRCP 51, that "[c]ounsel, in the heat of a trial, cannot be expected to respond with all the legal niceties and nuances of a brief writer." *Otterbeck v. Lamb*, 85 Nev. 456, 460, 456 P.2d 855, 858 (1969). The same principle applies to preservation under NRCP 50(a)-(b). In its oral NRCP 50(a) motion for judgment as a matter of law, MCI sufficiently, albeit briefly, put forth its arguments such that they are adequately preserved for appeal.



made if it was unreasonably dangerous to place the product in the hands of the user without suitable and adequate warning concerning safe and proper use." *Lewis v. Sea Ray Boats, Inc.*, 119 Nev. 100, 107, 65 P.3d 245, 249 (2003) (quoting *Outboard Marine Corp. v. Schupbach*, 93 Nev. 158, 162, 561 P.2d 450, 453 (1977)). "[T]he burden of proving causation can be satisfied in failure-to-warn cases by demonstrating that a different warning would have altered the way the plaintiff used the product or would have prompted [the] plaintiff to take precautions to avoid the injury." *Rivera*, 125 Nev. at 191, 209 P.3d at 275 (internal quotation marks omitted).

MCI contends that respondents did not prove causation as a matter of law for three reasons: (1) respondents did not propose what specific warning was absent, (2) any warning was superfluous because the potential for collisions with cyclists is an open and obvious danger, and (3) there was no evidence that Hubbard could have avoided the accident even if he had been warned. We agree with the district court that these arguments lack merit when all inferences are drawn, as they must be, in respondents' favor. *See Nelson*, 123 Nev. at 222, 163 P.3d at 424 (explaining that "the district court must view the evidence and all inferences in favor of the nonmoving party" when deciding whether to grant a motion for judgment as a matter of law).

First, plaintiffs do not need to provide the jury with a specific proposed warning in failure-to-warn cases. In typical design-defect cases, while a plaintiff *may* "bolster their case with evidence of an alternative design," we have expressly rejected any *requirement* that the plaintiff do so, calling such a requirement "fundamentally unfair." *Ford Motor Co. v. Trejo*, 133 Nev. 520, 524, 402 P.3d 649, 652 (2017). Similarly, failure-to-warn

SUPREME COURT
OF
NEVADA

(O) 1947A

plaintiffs may—but need not—provide the jury with an alternative or additional warning.

Next, the fact that a potential collision between vehicles and bicyclists is a well-known danger does not mean respondents did not prove causation. It is true that Nevada law does not require manufacturers to warn against generally known dangers. *See Yamaha Motor Co., U.S.A. v. Arnoult*, 114 Nev. 233, 241, 955 P.2d 661, 666 (1998). But the danger alleged here was not as obvious as MCI suggests. The risk was not simply that the bus, like any bus, could strike a cyclist. Rather, the alleged risk was that air displacement caused by the particular shape of this bus could create a strong suction force while passing a cyclist. Although Hubbard's testimony regarding his knowledge of this risk was far from clear,[3] the district court correctly found that "[e]ven if the evidence enabled this [c]ourt to find as a matter of law that Hubbard should have known generally of the 'risk of driving next to a bicyclist,' . . . no Nevada law holds that this would prevent a reasonable jury from finding that an adequate warning would have avoided the accident."

MCI's assertion that there was no evidence that Hubbard could have avoided the accident even if he had been warned fails when all reasonable inferences are drawn in respondents' favor. Hubbard testified

---

[3]When asked at trial, "Is it your understanding that, if a bus is moving at 30 or 35 miles an hour, that that will cause air blast or air displacement at the front of the bus? Have you ever heard that?" Hubbard answered, "No, sir." However, when confronted with his answer of "yes" to a very similar question at his deposition, Hubbard indicated that he was unfamiliar with the term "air blast" but knew that there was "air moving around a bus" when driving.

that he had seen Khiabani turn onto South Pavilion Center Drive before he followed in the bus. On this ground, the district court correctly found that there was "sufficient evidence for a reasonable jury to find that, had the driver been adequately warned about the dangerous nature of the [bus], he would have driven differently as early as when he turned onto Pavilion Center—for example by driving in the left lane instead of the right lane, or by driving slower so as to not pass the bicycle."[4]

In sum, respondents presented sufficient evidence for a reasonable jury to find that the failure to warn about air displacement's effect on passing bicyclists caused Khiabani's injury.[5] Therefore, we affirm the district court's denial of MCI's motions for judgment as a matter of law.

*The district court properly denied MCI's motion for a new trial*

"The decision to grant or deny a motion for a new trial rests within the sound discretion of the trial court, and this court will not disturb

---

[4]Nevada, unlike some jurisdictions, does not apply a "heeding presumption," *see Rivera*, 125 Nev. at 194, 209 P.3d at 277. Such a presumption requires no proof that a warned party would heed the warning. Nevertheless, in this matter, Hubbard testified that he certainly would have followed any safety training warnings he was given.

[5]MCI also argues that the district court erred in barring the presentation of evidence that NRS 484B.270 requires drivers who are overtaking or passing a bicycle to either move their vehicle to the lane to the left or keep at least three feet between the vehicle and the bicycle. We conclude the district court did not abuse its discretion in denying the inclusion of this evidence. This court has never held that warnings are unnecessary when a law already prohibits conduct. Further, the experts who testified regarding the air-disturbance effect said the effect is lessened the further a bicyclist is away from a bus, not that keeping a distance of three feet would completely eliminate the danger. For example, one expert testified, "The force doesn't suddenly go to zero at three feet . . . . [M]y estimates didn't associate the force with any particular distance."

that decision absent palpable abuse." *Edwards Indus., Inc. v. DTE/BTE, Inc.*, 112 Nev. 1025, 1036, 923 P.2d 569, 576 (1996).

*The district court properly used Khiabani's gross income to calculate the loss-of-support award*

MCI argued in its motion for new trial that the district court should have allowed evidence regarding Khiabani's net, take-home income rather than gross, pretax income for loss-of-support damages. While the question of whether a particular measure of damages is appropriate is subject to our plenary review, *see Davis v. Beling*, 128 Nev. 301, 316, 278 P.3d 501, 512 (2012), the district court's decision to exclude evidence is reviewed for an abuse of discretion, *see M.C. Multi-Family Dev., LLC v. Crestdale Assocs., Ltd.*, 124 Nev. 901, 913, 193 P.3d 536, 544 (2008). NRS 41.085(4) permits heirs to recover damages for "loss of probable support" that would have been provided by the decedent. Thus, as we have explained, "[h]eirs' damages, based on the decedent's lost earning capacity, may include present as well as future loss of support." *Freeman v. Davidson*, 105 Nev. 13, 16, 768 P.2d 885, 887 (1989).

We have not previously addressed whether juries should be informed of a decedent's pretax income or post-tax income to calculate an award for loss of probable support under NRS 41.085(4). Accordingly, we turn to other jurisdictions for guidance.

Under federal jurisprudence, loss-of-support damages must be based on the decedent's net, post-tax earnings. One of the leading federal cases on this point is *Norfolk & Western Railway Co. v. Liepelt*, 444 U.S. 490 (1980). There, the United States Supreme Court analyzed wrongful-death damages under the Federal Employers' Liability Act and held that "[i]t is [the decedent's] after-tax income, rather than his gross income before taxes, that provides the only realistic measure of his ability to support his family."

*Id.* at 493. *Liepelt* rejected the argument "that the introduction of evidence describing a decedent's estimated after-tax earnings is too speculative or complex for a jury." *Id.* at 494. *Liepelt* also held that juries should be informed about the nontaxable nature of an award for loss of support. *Id.* at 497-98. Although this court has declined to follow *Liepelt*'s second holding, *Otis Elevator Co. v. Reid*, 101 Nev. 515, 521-22, 706 P.2d 1378, 1382 (1985) ("[T]ax instructions are appropriate only in special circumstances when the likelihood that the jury will consider tax consequences is magnified by discussion of tax-related issues during the trial."), we have not yet spoken to the first.

A majority of state courts to consider this issue have diverged from *Liepelt*. *See generally* Lauren Guest & David Schap, *Rationales Concerning the Treatment of Federal Income Taxes in Personal Injury and Wrongful Death Litigation in the State Courts*, 21 J. Legal Econ. 85, 95-104 (2014) (surveying courts' treatment of this issue and determining that 30 states generally do not adjust damage awards to account for income tax exclusions). The Colorado Supreme Court, for example, has held that future income taxes should not be considered in calculating economic damages in wrongful death actions, reasoning that holding otherwise would invite "[a] battle of the experts about what Congress or the General Assembly might effectuate in the future regarding tax policy and the amount individual tax payers will likely owe in the future," increase the expenses of litigation, and distract juries. *Hoyal v. Pioneer Sand Co., Inc.*, 188 P.3d 716, 719-20 (Colo. 2008). The Illinois Supreme Court follows a similar path, based on the rationale that calculating economic losses is "not simple under the best of circumstances" and that considering income tax would only make that process "more complex." *Klawonn v. Mitchell*, 475 N.E.2d 857, 861 (Ill.

1985).  New York's highest court has likewise held that gross income is the proper measurement:

> No crystal ball is available to juries to overcome the inevitable speculation concerning future tax status of an individual or future tax law itself.  Trial strategies and tactics in wrongful death actions should not be allowed to deteriorate into battles between a new wave of experts consisting of accountants and economists in the interest of mathematical purity and of rigid logic over less precise common sense.

*Johnson v. Manhattan & Bronx Surface Transit Operating Auth.*, 519 N.E.2d 326, 329 (N.Y. 1988).

We are persuaded by the approach taken by the courts in Colorado, Illinois, and New York.  A deceased person's gross income is the most workable and realistic measure of what salary would be used to support their surviving family.  All such loss-of-support awards are based on an unavoidably imperfect attempt to predict an alternate future where the decedent had lived, received pay, and used it to support his or her family.  It is not practical to add conjecture regarding tax policy to that already tenuous counterfactual exercise.  Accordingly, we conclude that the district court did not abuse its discretion in excluding evidence of Khiabani's net income.

*The failure-to-warn causation issue was submitted to the jury*

MCI argues that the district court should have granted a new trial because the court provided a special verdict form that did not give the jury any opportunity to answer whether it found that respondents had proven the causation element of the failure-to-warn claim.  Thus, MCI claims, even if evidence of causation existed from which the jury could link the lack of a warning to the injury, contrary evidence also existed and the

jury erroneously was not asked to make that connection in determining liability.

Nevada allows juries to return special verdicts "in the form of a special written finding on each issue of fact." NRCP 49(a)(1). The district court "must give the instructions and explanations necessary to enable the jury to make its findings on each submitted issue." NRCP 49(a)(2). Special verdict forms should be read in concert with jury instructions. *See Yamaha Motor Co.*, 114 Nev. at 245, 955 P.2d at 669 ("We conclude that, when read together, the jury instructions and the special verdict form were not prejudicially misleading on this point.").

The district court's special verdict form contained five interrogatories under the heading "Liability." Interrogatories 1-4 related to the design-defect theories of liability, while Interrogatory 5 related to the failure-to-warn theory of liability. Interrogatories 1-4 were nearly identical to one another and inquired whether a design defect was the "legal cause" of Khiabani's death. For example, Interrogatory 4 read as follows: "Is MCI liable for defective design (Did the aerodynamic design of the [bus] make it unreasonably dangerous and a legal cause of Dr. Khiabani's death)?" However, Interrogatory 5 did not mention causation, asking only, "Did MCI fail to provide an adequate warning that would have been acted upon?" The liability section containing these interrogatories concluded with a paragraph which began "If you answered 'Yes' to any of the above liability questions . . . ."

The jury answered "no" to every interrogatory on the design-defect claims, and "yes" to the failure-to-warn question presented in Interrogatory 5. MCI contends that the district court erred in denying its motion for a new trial on the ground that the special verdict form did not

allow the jury to make a decision regarding causation for the failure-to-warn theory.

MCI argues that the jury could only answer the question posed in Interrogatory 5—whether MCI failed to provide an adequate warning that would have been acted upon—and did not have any opportunity to indicate whether any such failure to warn was the cause of Khiabani's death. MCI emphasizes that in contrast to Interrogatory 5, the jury decided in its favor on every interrogatory that explicitly inquired as to legal causation.

However, while Interrogatory 5 did not mention causation, Jury Instruction 31 did, and "[t]his court presumes that a jury follows the district court's instructions." *Krause Inc. v. Little*, 117 Nev. 929, 937, 34 P.3d 566, 571 (2001). Jury Instruction 31 provided as follows: "If you find that warnings provided with the [bus] were inadequate, the defendant cannot be held liable unless Plaintiffs prove by a preponderance of the evidence that the individual who might have acted on any warning would have acted in accordance with the warning, and that doing so would have prevented the injury in this case." We conclude that the jury instruction and verdict form, read together, were sufficient to ensure that the jury considered the question of causation for the failure-to-warn claim.

For this claim, the jury was required to consider whether there was a failure to warn that made the bus unreasonably dangerous; whether the driver who would have received the warning would have acted upon it; and whether, if so, the injury would have been prevented. *See Rivera*, 125 Nev. at 191, 209 P.3d at 275 (discussing the elements of failure-to-warn claims). All these questions were contained in Jury Instruction 31, and we presume the jury followed the instruction, even if the prevention question

was not repeated in the special verdict form. Further, the jury was aware that Interrogatory 5 pertained to liability. Indeed, it was located in a section of the special verdict form titled "Liability." Thus, the jury was given the opportunity to consider whether the absence of a warning regarding air displacement would have been acted upon and would have prevented Khiabani's injuries. Therefore, we conclude that the district court did not abuse its discretion in denying the motion with respect to the verdict form.

### The verdict was not inconsistent

MCI further argues that the district court should have granted a new trial because the jury's answers to the interrogatories were inconsistent and the court should not have entered a judgment without attempting to reconcile those inconsistencies. Specifically, MCI sees a contradiction in the jury's findings that (1) an air blast was not an unreasonably dangerous condition that caused the collision and (2) the failure to warn of an air blast was an unreasonably dangerous condition that caused the collision.

"[J]udgment must not be entered" if the answers to special verdict interrogatories are "inconsistent with each other and one or more is also inconsistent with [a] general verdict." NRCP 49(b)(4); *see Lehrer McGovern Bovis, Inc. v. Bullock Insulation, Inc.*, 124 Nev. 1102, 1106, 197 P.3d 1032, 1035 (2008). Courts must make an effort to harmonize seemingly inconsistent special verdict answers and must interpret them in a consistent way if possible. *See Duk v. MGM Grand Hotel, Inc.*, 320 F.3d 1052, 1058-59 (9th Cir. 2003) (citing *Gallick v. Balt. & Ohio R.R. Co.*, 372 U.S. 108, 119 (1963)).

There is no contradiction here. As noted, failure-to-warn claims have the same elements as design-defect claims, *Rivera*, 125 Nev. at 191, 209 P.3d at 275, but the "defect" *is* the lack of a warning rather than an issue with the product itself. The jury could have found that the air blast effect itself was not an unreasonably dangerous condition but that the lack of a warning nevertheless made the product unreasonably dangerous. Therefore, we conclude that the jury's answers on the verdict form were not inconsistent.

*No newly discovered evidence merited a new trial*

MCI argues that news reporting after the trial brought to light new facts that merited a new trial. MCI argues that the revelations in these reports placed Khiabani's continued employment—had he lived—in such doubt that a new trial was warranted, given that the expert testimony on financial support at trial was based on the assumption that Khiabani would have continued in the employment he held—or, at the very least, continued being employed as a surgeon.

NRCP 59(a)(1)(D) provides that "the court may, on motion, grant a new trial" on the ground that there has been "newly discovered evidence material for the party making the motion that the party could not, with reasonable diligence, have discovered and produced at the trial." We review the denial of such a motion for an abuse of discretion. *See Lucey v. First Nat. Bank of Nev.*, 73 Nev. 64, 69, 307 P.2d 774, 776-77 (1957).

Here, as the district court found, the "new" evidence pointed out by MCI likely could have been discovered with reasonable diligence before or during trial. Respondents provided MCI with a release months before trial commenced, authorizing MCI to obtain Khiabani's employment information from the medical school. It appears that MCI did not ever

subpoena that information. MCI surmises that the medical school would not have released the information contained in the news articles because the school was keeping the facts of the audit confidential. This is pure speculation, not proof that MCI could not have discovered the evidence with reasonable diligence.

MCI also argues that, if respondents' counsel knew that Khiabani's employment was in jeopardy and still proceeded to argue to the court and the jury as if it were not, respondents' counsel perpetrated a fraud upon the court. The record is simply devoid of any evidence to support such a bold contention, and the district court correctly found this argument to be too speculative. Accordingly, we conclude that the district court did not abuse its discretion in denying MCI's motion for a new trial on the ground of newly discovered evidence.

*MCI was entitled to offset the judgment*

MCI argues that because respondents had settled with all other defendants before trial for several million dollars, the jury's judgment of $18,746,003.62 should be offset by the settlement amount. Respondents argue that Nevada's offset statute, NRS 17.245, does not apply to strictly liable defendants like MCI because they are not entitled to contribution. The district court agreed with respondents and thus denied MCI's motion to alter or amend the judgment to offset the settlement proceeds paid by other defendants. We reverse.

This court generally reviews an order denying a motion to alter or amend a judgment for an abuse of discretion. *See AA Primo Builders, LLC v. Washington*, 126 Nev. 578, 589, 245 P.3d 1190, 1197 (2010). However, "statutory interpretation is a question of law and is reviewed de novo." *Banks ex rel. Banks v. Sunrise Hosp.*, 120 Nev. 822, 846, 102 P.3d

52, 68 (2004). Because the district court's order hinged on its interpretation of NRS 17.245 with respect to strict liability claims, we review this question de novo.

"When interpreting a statute, we give words their plain meaning unless attributing the plain meaning would violate the spirit of the statute." *Banks*, 120 Nev. at 846, 102 P.3d at 68. NRS 17.245(1)(a) provides, in relevant part, as follows:

> When a release or a covenant not to sue or not to enforce judgment is given in good faith to one of two or more persons liable in tort for the same injury or the same wrongful death . . . it reduces the claim against the others to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, whichever is the greater.

Whether defendants held responsible under a strict liability theory are entitled to an offset under this provision is an issue of first impression for this court. As we recently explained in *J.E. Johns & Associates v. Lindberg*, however, when considering whether NRS 17.245 applies in a given matter, "district courts must determine whether both the settling and the nonsettling defendants were responsible for the same injury." 136 Nev. 477, 478, 470 P.3d 204, 206 (2020). Further, we held, contribution and offset are distinct concepts, and eligibility for an offset should not be determined by whether the settling and nonsettling defendants were joint tortfeasors under NRS 17.225, which governs the right of contribution. *Id*. at 480-81, 470 P.3d at 208.

Nothing in NRS 17.245 suggests that lines should be drawn between defendants found strictly liable and other tortfeasors when both are responsible for the same injury. NRS 17.245 is clear on its face and thus applies to MCI, as there is no dispute that MCI and the other defendants

were liable for the same injury. Further, the jury calculated the total damages for that single injury and respondents had already received partial payment from the settling defendants. MCI was therefore entitled to offset the judgment under NRS 17.245. To hold otherwise would permit a double recovery by respondents for the same injury. *See Elyousef v. O'Reilly & Ferrario, LLC,* 126 Nev. 441, 444, 245 P.3d 547, 549 (2010) (adopting the double recovery doctrine and explaining that "a plaintiff can recover only once for a single injury even if the plaintiff asserts multiple legal theories"). Accordingly, the district court should have granted MCI's motion to alter or amend the judgment to offset the settlement proceeds paid by other defendants, and we remand for calculation of the offset due.

*The district court properly denied MCI's motion to retax costs*

We reject MCI's contention that the district court's award of costs included improper expenses that would more properly be characterized as attorney fees and that the expert witness fees unjustifiably exceeded the statutory cap in NRS 18.005. "The determination of allowable costs is within the sound discretion of the trial court." *Sheehan & Sheehan v. Nelson Malley & Co.*, 121 Nev. 481, 493, 117 P.3d 219, 227 (2005). Thus, we defer to the district court's finding that respondents were not seeking certain costs as an improper means to recover attorney fees.

Regarding expert witness fees, NRS 18.005(5) generally caps such costs to not more than five expert witnesses in an amount of no more than $1,500 per witness and requires the district court to carefully evaluate a request for excess fees. In evaluating such a request, the court should consider several factors, including "the importance of the expert's testimony to the party's case," the extent of the expert's work, and "whether the expert

had to conduct independent investigations or testing." *Frazier v. Drake*, 131 Nev. 632, 650-51, 357 P.3d 365, 377-78 (Ct. App. 2015). In its order on this issue, the district court cited these factors and respondents' supporting documentation and taxed the entire amount requested for expert fees. We again defer to the district court's decision, discerning no abuse of discretion, particularly given the obvious importance of experts to the entirety of respondents' claims.

## CONCLUSION

The district court properly denied the motions for judgment as a matter of law, for a new trial, and to retax costs, and we affirm the judgment and post-judgment orders as to those matters. However, the district court incorrectly denied the motion to alter or amend the judgment to offset the settlement proceeds paid by other defendants. We therefore reverse the judgment as to its amount and remand to the district court to determine the amount of the offset to which MCI is entitled and enter a corrected judgment thereon.

_____, J.
Stiglich

We concur:

_____, C.J.
Hardesty

_____, J.
Cadish

_____, J.
Pickering

_____
Parraguirre

_____, J.
Silver

_____, J.
Herndon

Supreme Court
OF
Nevada

(O) 1947A

20