FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| AMERICAN NATIONAL PROPERTY AND CASUALTY COMPANY, *Plaintiff/Counter-Defendant/ Appellee*, <br><br> v. <br><br> BRITTNEY L. GARDINEER, *Defendant/Counter-Claimant/ Appellant.* | No. 20-15826 <br><br> D.C. No. 2:18-cv-01548-RFB-BNW <br><br><br> OPINION |

Appeal from the United States District Court
for the District of Nevada
Richard F. Boulware II, District Judge, Presiding

Argued and Submitted May 11, 2021
San Francisco, California

Filed February 11, 2022

Before: J. Clifford Wallace and Daniel P. Collins, Circuit
Judges, and Jed S. Rakoff,[*] District Judge.

Opinion by Judge Collins

---

[*] The Honorable Jed S. Rakoff, United States District Judge for the Southern District of New York, sitting by designation.

# SUMMARY**

### Insurance Law

The panel affirmed the district court's summary judgment in favor of American National Property and Casualty Company ("ANPAC") in a diversity insurance coverage action arising under Nevada law.

The appellant, Brittney Gardineer, was involved in an automobile accident, and she sued the other driver, Lynette Hill ("Hill"), and the vehicle owner, Dennis Hill. Dennis Hill had both a primary insurance policy and an umbrella policy with ANPAC. After Dennis's death, the parties reached a settlement wherein ANPAC paid Gardineer the policy limit of Dennis's automobile insurance policy, and Gardineer reserved the right to assert that ANPAC had a duty to indemnify Hill under Dennis's umbrellas policy for Hill's liability. ANPAC filed this action seeking a declaration that it had no duty to indemnify Hill under the umbrella policy.

The panel held that Dennis Hill's umbrella policy, by its plain and unambiguous terms, did not provide coverage for Lynette Hill's liability arising from her use of Dennis's vehicle. The panel first considered the terms of the "Coverage" section in Dennis's umbrella policy, and held that it extended coverage to Hill's liability for damages only if Hill is an "insured" within the meaning of the policy. The term "insured" meant Dennis, his wife, and any "relative" – defined as a related person living in the household. Because it was undisputed that Hill did not reside in Dennis's

---

** This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

household, Hill was not a "relative" and not an "insured" under the policy.

Hill alleged that coverage for her liability arose under "Exclusion 29" of the umbrella policy. The panel rejected Gardineer's argument that Exclusion 29 created an ambiguity as to whether Hill's liability was covered under Dennis's umbrella policy. The panel held that Gardineer's construction of Exclusion 29 was not based on a reasonable reading of the text. This conclusion was reinforced by a substantial body of caselaw from other jurisdictions that, in the panel's view, the Nevada Supreme Court would likely follow. Under the panel's reading of the plain language of the policy, Exclusion 29's exception did not expand the policy's coverage beyond its underlying coverage terms. Because those terms did not extend coverage to Hill's liability, it followed that Dennis's umbrella policy did not require ANPAC to indemnify Hill for her liability from the accident with Gardineer.

## COUNSEL

Matthew H. Friedman (argued) and Christopher B. Phillips, Ford & Friedman, Henderson, Nevada; Brice J. Crafton, Deaver & Crafton, Las Vegas, Nevada; for Defendant/Counter-Claimant/Appellant.

W. Randolph Patton (argued), Thorndal Armstrong Delk Balkenbush & Eisinger, Las Vegas, Nevada, for Plaintiff/Counter-Defendant/Appellee.

**OPINION**

COLLINS, Circuit Judge:

In this insurance-coverage dispute arising under Nevada law, we are asked to decide whether an exception to an exclusion from coverage can be construed as *expanding* the terms of the policy's otherwise-applicable coverage. Courts in other jurisdictions have generally rejected such an approach to construing policy exclusions, and we predict that the Nevada Supreme Court would follow a similar rule. Based on that understanding, and on our reading of the policy terms at issue here, we conclude that the district court correctly granted summary judgment in favor of the insurer in this case. We therefore affirm its judgment.

**I**

On September 18, 2013, while driving her Honda CRV in Clark County, Nevada, Brittney Gardineer was involved in an accident with a Ford Explorer driven by Lynette Hill, who is now known as Landon Hill ("Hill''). The Ford Explorer was owned by Hill's father-in-law, Dennis Hill ("Dennis"), and Hill was driving it with his permission. In August 2015, Gardineer filed suit in Nevada state court against Hill and Dennis for damages arising from the accident. Although Dennis had not been driving the Explorer, he was sued on a theory of negligent entrustment.

At the time of the accident, Dennis had both a primary automobile insurance policy and an umbrella policy with American National Property and Casualty Company

("ANPAC").[1]  Dennis died in November 2017 while Gardineer's lawsuit was still pending, but after his death, the parties settled that lawsuit in June 2018. Specifically, in exchange for dismissal with prejudice of the lawsuit against Hill and Dennis's Estate, ANPAC agreed to pay to Gardineer the policy limit ($250,000) of Dennis's automobile insurance policy. Under the terms of the settlement, however, Gardineer expressly reserved the right to assert that ANPAC had a "duty to indemnify" Hill, under Dennis's umbrella policy, for Hill's liability arising from the accident.[2] The settlement contemplated that ANPAC would file a declaratory relief action against Gardineer in federal court to resolve the disputed issue of Hill's coverage under Dennis's umbrella policy. If ANPAC succeeded in defeating coverage for Hill's liability under the umbrella policy, then Gardineer would receive nothing further. If Gardineer established coverage, then the parties would either agree to, or arbitrate, the amount of additional damages that Gardineer should receive, consistent with the coverage thereby established and within an "agreed cap on damages" set forth in the settlement.

Invoking diversity jurisdiction under 28 U.S.C. § 1332(a)(1), ANPAC filed this lawsuit against Gardineer in the district court in August 2018, asserting a single claim seeking a declaration that ANPAC had no duty under Dennis's umbrella policy to indemnify Hill for any liability

---

[1] An "umbrella policy" generally refers to an "insurance policy covering losses that exceed the basic or usual limits of liability provided by other policies." *See Insurance Policy*, BLACK'S LAW DICTIONARY (11th ed. 2019).

[2] The settlement agreement did not reserve any right for Gardineer to assert any further claims under the umbrella policy with respect to *Dennis's* liability for the accident.

arising from the accident.  *See* 28 U.S.C. § 2201.  Gardineer answered and asserted a converse claim for declaratory relief against ANPAC.  After conducting discovery, ANPAC and Gardineer filed cross-motions for summary judgment in 2019.  The district court held that ANPAC had no duty to indemnify Hill under Dennis's umbrella policy, and the court therefore granted ANPAC's motion for summary judgment and denied Gardineer's.  Gardineer timely appealed.

## II

Gardineer and ANPAC agree that the scope of coverage afforded under the terms of Dennis's umbrella policy raises a question of Nevada law that we review de novo.  *Trishan Air, Inc. v. Federal Ins. Co.*, 635 F.3d 422, 426 (9th Cir. 2011).  Under Nevada law, the threshold question in construing an insurance policy is whether the relevant language of the policy is ambiguous or unambiguous.  "If a provision in an insurance contract is unambiguous, a court will interpret and enforce it according to the plain and ordinary meaning of its terms."  *Powell v. Liberty Mut. Fire Ins. Co.*, 252 P.3d 668, 672 (Nev. 2011).  But if the relevant language is ambiguous, then "it will be construed against the insurer, because the insurer was the drafter of the policy."  *Fourth St. Place, LLC v. Travelers Indem. Co.*, 270 P.3d 1235, 1239 (Nev. 2011).  In deciding whether such an ambiguity exists, the court's task is to determine whether the terms used in the policy, when considered in "their plain, ordinary and popular sense," create "multiple *reasonable* expectations of coverage as drafted."  *Century Sur. Co. v. Casino W., Inc.*, 329 P.3d 614, 616 (Nev. 2014) (en banc) (simplified) (emphasis added).  As with all questions of insurance-policy construction, the court must consider the relevant language in the context of the "policy as a whole"

and should avoid any interpretation that would "lead to an absurd or unreasonable result." *Id*.

Here, we conclude that Dennis's umbrella policy, by its plain and unambiguous terms, does not provide coverage for Hill's liability arising from her use of Dennis's vehicle.

## A

We begin by considering the terms of the "Coverage" section of Dennis's umbrella policy. Using bolded language to refer to terms defined elsewhere in the policy, that coverage section provides, in relevant part, as follows:

> **We** will pay damages for which an **insured** becomes legally liable because of **bodily injury**, and **property damage** resulting from a **loss**:
>
> a.  in excess of the **retained limit**;
>
> b.  for **losses** to which **your primary insurance** applies.
>
> **We** will pay damages for which an **insured** becomes legally liable because of **personal injury** resulting from a **loss** with no **retained limit** requirement.
>
> **Our** coverage is no broader than the **primary insurance** except for **our** limit of liability.

The policy elsewhere defines the terms "we" and "our" as "the company providing this insurance," *i.e.*, ANPAC, and the first two sentences of this coverage section state what "damages" liability ANPAC "will pay." The third sentence,

by contrast, is framed as a *limitation* on the "coverage" described in the prior two sentences (or, perhaps, elsewhere in the policy), and that sentence is thus not itself an additional grant of coverage. Notably, in describing the coverage granted, the first two sentences each use the identical phrase "damages for which an *insured* becomes legally liable" (emphasis added), which each sentence then combines with certain respective additional limitations. Accordingly, by its plain terms, this coverage section only provides coverage for certain damages for which an "insured" becomes liable. This section therefore extends coverage to Hill's liability for damages only if Hill is an "insured" within the meaning of the policy.

As relevant here, the policy defines "insured" as "**you** or a **relative**," and "you" and "your" mean "the named **insured** shown in the **Declarations**" as well as that named insured's "spouse if living in the same household." The only named insured listed in the policy's "Declarations" is Dennis, and he had a wife who lived in the same household with him. Accordingly, the term "insured" under the policy means Dennis, his wife, and any "relative." In turn, the policy defines a "relative" as "a person living in your household and related to you by blood, marriage, or adoption, including a ward or foster child." Because it is undisputed that Hill did not reside in Dennis and his wife's household, Hill does not qualify as a "relative" under the policy and is therefore not an "insured" under the policy. Gardineer does not contest this point on appeal.

Because Hill is not an "insured," the unambiguous language of the coverage section of Dennis's umbrella policy does not extend coverage to Hill's liability arising from the accident with Gardineer.

**B**

Gardineer nonetheless contends that coverage for Hill's liability arises under a different provision of the umbrella policy.  Specifically, she relies on the following express exclusion ("Exclusion 29") contained within the policy:

> **We** do not provide coverage for:
>
> . . .
>
> any **loss** arising out of the entrustment by any **insured** to any person with regard to the ownership, maintenance, use, loading, or unloading of any **vehicle** or **aircraft**.
>
> This exclusion does not apply if coverage is provided by **primary insurance** described in the **Declarations**.  **Our** coverage is no broader than the **primary insurance**, except for **our** limit of liability.

Gardineer argues that, by expressly stating that the exclusion's denial of coverage "does not apply if" (as here) "coverage is provided by *primary insurance*" (emphasis added), Exclusion 29 can be read to say that such "primary insurance" provides the benchmark for determining the umbrella policy's coverage—subject only to the modification (noted in the next sentence) that the umbrella policy's higher "limit of liability" applies.  And because all parties agree that Hill's liability for the accident *was* covered by the relevant "primary insurance," *i.e.*, Dennis's automobile policy, Gardineer asserts that, under this reading, Hill's liability would be covered by the umbrella policy.  The resulting ambiguity, Gardineer contends, should be resolved

against ANPAC and gives rise to a reasonable expectation of coverage.  We reject this argument.

## 1

Exclusion 29 states that certain losses are not covered by the umbrella policy, even if they would otherwise fall within the terms of that policy's coverage clause.  However, Exclusion 29 then states that the "exclusion" it sets forth "does not apply" if relevant "coverage" is provided by "primary insurance described in the Declarations."  Here, there is no dispute that relevant "coverage is provided by primary insurance described in the Declarations"[3] and that the exception to Exclusion 29 therefore applies. Accordingly, the exclusion for any "loss arising out of the entrustment by [Dennis] to any person with regard to the ownership, maintenance, use, loading, or unloading of any vehicle"—which arguably might otherwise have applied to losses resulting from Hill's use of Dennis's car with his permission—therefore does not apply.  Because the exclusion is thus inoperative, "'coverage is *revived*'" or "re-establish[ed]" in accordance with the otherwise applicable coverage terms of the umbrella policy.  *See Zurich Am. Ins. Co. v. Ironshore Specialty Ins. Co.*, 497 P.3d 625, 629–30 (Nev. 2021) (emphasis added) (quoting *E.I. du Pont de Nemours v. Admiral Ins. Co.*, 711 A.2d 45, 53 (Del. Super. 1995)).  As a result, for example, if Dennis had been found liable for negligent entrustment in an amount that exceeded the limits of his primary insurance, then coverage under the

---

[3] The "Declarations" section of Dennis's umbrella policy describes the "primary insurance" as including his "automobile liability" policy.

umbrella policy for *his* liability would have been available.[4] But because Hill's liability is not covered by the language of the umbrella policy's coverage section, *see supra* at 7–8, the removal of the particular exclusion set forth in Exclusion 29 makes no difference vis-à-vis her liability.

Gardineer nonetheless argues that, under Exclusion 29, the coverage that is restored when the exception to the exclusion applies is *not* merely the coverage set forth in the umbrella policy's coverage section. According to Gardineer, because Exclusion 29 says that its denial of coverage does not apply "if coverage is provided by primary insurance described in the Declarations," the coverage that then applies includes the *referenced* "coverage . . . provided by primary insurance," with the exception (as provided in the last sentence of Exclusion 29) that the "limit of liability" is "broader." And because the exclusion for "any loss arising out of the entrustment" by Dennis of his vehicle to Hill does not apply, Gardineer argues that Exclusion 29 should be viewed as *granting* coverage for any such "loss" arising from Dennis's entrustment (including the losses arising from Hill's liability). In our view, Gardineer's construction of Exclusion 29 is not based on a reasonable reading of its text.

The key phrase on which Gardineer relies—"if coverage is provided by primary insurance described in the Declarations"—refers to the condition that *triggers* the exception to the exclusion; it does not describe what coverage then applies under the umbrella policy as a *consequence* of triggering that exception. Rather, under the

---

[4] This point, however, is academic, because the parties' settlement agreement expressly extinguished any claim by Gardineer under the umbrella policy regarding *Dennis's* liability. *See supra* note 2.

unambiguous language of Exclusion 29, the specified consequence of triggering the exception is that "[t]his exclusion does not apply." Because triggering the exception renders Exclusion 29 inoperative, its effect is necessarily to leave in place whatever coverage would have existed in the absence of Exclusion 29. That is, because Exclusion 29 *categorically* bars coverage of the excluded losses—without regard to whether they otherwise would or would not have been covered—removing that bar does not, as Gardineer would have it, create a converse categorical rule *granting* coverage to all such claims. It simply removes that categorical bar, thereby leaving coverage to be described elsewhere in the policy. Here, that means the coverage section of the umbrella policy and, as explained earlier, that coverage does not extend to Hill's liability.

**2**

This conclusion is reinforced by a substantial body of caselaw from other jurisdictions that, in our view, the Nevada Supreme Court would likely follow. *See High Country Paving, Inc. v. United Fire & Cas. Co.*, 14 F.4th 976, 978 (9th Cir. 2021) ("If the state's highest appellate court has not decided the question presented, then we must predict how the state's highest court would decide the question.").

Specifically, a number of courts have expressly rejected similar arguments that an exception to an exclusion should be understood as conferring coverage that might otherwise conflict with the policy's general coverage terms. As the Supreme Court of Virginia has succinctly explained: "An exception to an exclusion only has bearing on that exclusion's applicability—it is without force with respect to other provisions of the policy. In other words, an exception to an exclusion does not create coverage where none exists."

*PBM Nutritionals, LLC v. Lexington Ins. Co.*, 724 S.E.2d 707, 713 (Va. 2012) (citation omitted). Several other States have reached similar conclusions. *See*, *e.g.*, *Progressive Southeastern Ins. Co. v. Smith*, 113 N.E.3d 229, 235 (Ind. Ct. App. 2018) ("[A]n exception to an exclusion cannot create coverage where none exists. Exclusion clauses do not grant or enlarge coverage; rather, they are limitations on the insuring clause.") (citations and internal quotation marks omitted); *Amish Connection, Inc. v. State Farm Fire and Cas. Co.*, 861 N.W.2d 230, 239 (Iowa 2015) ("[A]n exception to an exclusion does not create coverage that otherwise is lacking."); *Wadzinski v. Auto-Owners Ins. Co.*, 818 N.W.2d 819, 825 (Wis. 2012) ("[A]n exception to an exclusion cannot create coverage where the policy's initial grant of coverage does not provide that type of coverage."); *see also Black & Veatch Corp. v. Aspen Ins. (UK) Ltd.*, 882 F.3d 952, 958 (10th Cir. 2018) (explaining that, under New York law, "[e]xceptions to the exclusions may restore—but do not create—coverage").[5]

Moreover, as we have previously observed, "[w]here Nevada law is lacking, its courts have looked to the law of other jurisdictions, particularly California, for guidance." *Mort v. United States*, 86 F.3d 890, 893 (9th Cir. 1996). It is therefore particularly noteworthy that California is among the States that have applied the same rule. *See*, *e.g.*, *Hurley*

---

[5] Indeed, some courts have applied this rule even in the context of exclusions whose exceptions (unlike this case) arguably used phrasing that was more suggestive of coverage, such as "we will pay." *See*, *e.g.*, *Erie Ins. Prop. & Cas. Co. v. Chaber*, 801 S.E.2d 207, 215 (W. Va. 2017) (although the policy exclusion contained an exception stating that, if condition was met, "we [*i.e.*, the insurer] will pay" for specified losses, court applied rule that an exception to an exclusion "does not revive or reinstate coverage for losses otherwise unambiguously excluded by the policy").

*Constr. Co. v. State Farm Fire & Cas. Co.*, 12 Cal. Rptr. 2d 629, 633 (Ct. App. 1992) ("Ordinarily, an exception to a policy exclusion does not create coverage not otherwise available under the coverage clause."); *see also Sony Comput. Ent. Am., Inc. v. Am. Home Assurance Co.*, 532 F.3d 1007, 1017 (9th Cir. 2008) (explaining that, under California law, exclusions "'cannot expand the basic coverage granted in the insuring agreement'" (quoting *Stanford Ranch, Inc. v. Md. Cas. Co.*, 89 F.3d 618, 627 (9th Cir. 1996))). Indeed, in interpreting insurance policies, California courts generally follow a two-step approach in which exclusions to coverage are not considered unless the court *first* concludes that there is coverage under the coverage clauses of the policy. *See*, *e.g.*, *Waller v. Truck Ins. Exch., Inc.*, 900 P.2d 619, 625 (Cal. 1995) ("Before even considering exclusions, a court must examine the coverage provisions to determine whether a claim falls within the policy terms.") (simplified); *August Ent., Inc. v. Phila. Indem. Ins. Co.*, 52 Cal. Rptr. 3d 908, 920 (Ct. App. 2007) (same) (citing *Waller*, 900 P.2d at 625); *see also K & L Homes, Inc. v. Am. Fam. Mut. Ins. Co.*, 829 N.W.2d 724, 728 (N.D. 2013) ("[A]n exception may become applicable if, and only if, there is an initial grant of coverage under the policy and the relevant exclusion containing the exception operates to preclude coverage.").

Gardineer has not cited any case to us that would indicate that the Nevada Supreme Court would not follow this line of authority. On the contrary, that court's recent description of the effect of an exception to an exclusion as "*re-establish[ing]* coverage" indicates that the Nevada Supreme Court likewise understands that, when such an exception applies, the original coverage set forth in the policy's coverage provisions comes back into effect. *Zurich Am. Ins. Co.*, 497 P.3d at 630 (emphasis added).

Accordingly, we reject Gardineer's argument that Exclusion 29 creates an ambiguity as to whether Hill's liability is covered under Dennis's umbrella policy. Under our reading of the plain language of that policy, as reinforced by the above-cited caselaw, Exclusion 29's exception does not expand the policy's coverage beyond its underlying coverage terms. Because those terms do not extend coverage to Hill's liability, it follows that Dennis's umbrella policy does not require ANPAC to indemnify Hill for her liability from the accident with Gardineer.

## III

For the foregoing reasons, the district court correctly granted summary judgment to ANPAC.

**AFFIRMED.**