**NOT FOR PUBLICATION**

FILED

UNITED STATES COURT OF APPEALS

JUL 7 2022

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

EGG AND I, LLC, a Nevada limited liability company; EGG WORKS, LLC, a Nevada limited liability company; EGG WORKS 2, LLC, a Nevada limited liability company; EGG WORKS 3, LLC, a Nevada limited liability company; EGG WORKS 4, LCC, a Nevada limited liability company; EGG WORKS 5, LLC, a Nevada limited liability company; EGG WORKS 6, LLC, a Nevada limited liability company; EW COMMISSARY, LLC, a Nevada limited liability company,

        Plaintiffs-Appellants,

  v.

U.S. SPECIALTY INSURANCE COMPANY, a Texas Corporation; PROFESSIONAL INDEMNITY AGENCY, INC., DBA Tokio Marine, HCC-Specialty Group, a New Jersey corporation,

        Defendants-Appellees.

No. 21-15545

D.C. No. 2:20-cv-00747-KJD-DJA

MEMORANDUM*

Appeal from the United States District Court
for the District of Nevada
Kent J. Dawson, District Judge, Presiding

Submitted June 16, 2022**
San Francisco, California

---

* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

** The panel unanimously concludes that this case is suitable for decision without oral argument. *See* FED. R. APP. P. 34(a)(2)(C).

Before: BYBEE, CALLAHAN, and COLLINS, Circuit Judges.

Plaintiffs-Appellants are a group of affiliated corporations that operate family-style restaurants in Clark County, Nevada. On March 20, 2020, in response to the Covid-19 pandemic, Nevada Governor Steve Sisolak issued an emergency order prohibiting in-person dining at all restaurants in the State. Plaintiffs, who are insureds under a "restaurant recovery insurance" policy issued by Defendants-Appellants U.S. Specialty Insurance Company and Professional Indemnity Agency, claimed that, as a result of the Governor's order, they had incurred covered "business interruption" losses under this policy. Alleging that Defendants refused to cover the losses, Plaintiffs filed a class action complaint in the district court challenging the denial of coverage under a variety of state-law theories and seeking, *inter alia*, damages and declaratory relief. The district court granted Defendants' motion to dismiss for failure to state a claim, holding that, as a matter of law, the "alleged losses are not covered" by the policy's terms. The district court had jurisdiction under 28 U.S.C. § 1332(d), and we have jurisdiction under 28 U.S.C. § 1291. Reviewing the district court's construction of the insurance policy de novo, *see Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1147 (9th Cir. 1998), we affirm.

The parties agree that the insurance policy at issue is governed by Nevada law. Under Nevada law, courts must interpret insurance policy language

2

"according to the plain meaning of its terms." *Century Sur. Co. v. Casino West, Inc.*, 329 P.3d 614, 616 (Nev. 2014); *see also American Excess Ins. Co. v. MGM Grand Hotels, Inc.*, 729 P.2d 1352, 1354 (Nev. 1986) (stating that policy terms must be construed "in their plain, ordinary and popular connotations"). Here, the district court correctly held that, under the plain language of the policy, Plaintiffs' alleged losses are not covered.

The policy limits covered losses (including business interruption losses) to specified losses "incurred by the *Insured* directly and solely as the result of a covered *Insured Event*." Plaintiffs' claim of a covered "Insured Event" rests solely on their allegation that an "Accidental Contamination" has occurred. The policy defines "Accidental Contamination" as follows:

> Any accidental or unintentional contamination, impairment or mislabeling of an *Insured Product(s)*, which occurs during or as a result of its production, preparation, manufacture, packaging or distribution—provided that the use or consumption of such *Insured Product(s)* has resulted in or would result in clear, identifiable, internal or external visible physical symptoms of bodily injury, sickness, disease or death of any person(s), within three hundred and sixty five (365) days following such consumption or use.

The phrase "Insured Product(s)," in turn, is defined as follows:

> **INSURED PRODUCT(S)** means all ingestible products for human consumption, or any of their ingredients or components, that have been reported to the *Insurer* on the application on file with the *Insurer* for the effective dates of this Policy or by addendum to such application and that are:

3

**a.** in production; or

**b.** have been manufactured, handled or distributed by the *Insured*; or

**c.** manufactured by any contract manufacturer for the *Insured*; or

**d.** being prepared for or are available for sale; or

**e.** all ingestible products for human consumption served at any restaurant location operating under the same trade name as the *Insured*.

The declarations page further states that "Insured's Products" are "[a]ll retail restaurant offerings served during the Policy period at any time at any of the Insured's Locations in the manner prescribed in the Application form signed and dated August 29, 2019 and held on file with the Insurer." The referenced August 29, 2019 application required Plaintiffs to list the percentages of the various categories of "Insured Products" sold, such as "Fountain Drinks," "Poultry," etc.

Plaintiffs contend that "in-person *food service*" qualifies as an "Insured Product" under the policy and that, as a result, all of the elements of an "Accidental Contamination" are met: the Governor's order and the pandemic resulted in "impairment" of that product; that impairment occurred "during" the "production, preparation, manufacture, packaging or distribution" of that product; and use of that product—*i.e.*, in-person food service—"would result in . . . physical symptoms of bodily injury, sickness, disease or death of any person" within a year of such use. This theory fails, because Plaintiffs' effort to define the "insured product" as "in-person food service"—as opposed to the food items served—contradicts the

4

plain language of the policy. *Casino West*, 329 P.3d at 616. The policy's express definition of "Insured Product(s)" limits that term to "*ingestible* products *for human consumption*, or any of their *ingredients or components*" (emphasis added). Plaintiffs' reliance on the further statement in the declarations page is unavailing, because "restaurant offerings" that are "served" likewise plainly refers to ingestible items. If any further confirmation were needed, that understanding of the declarations page's language is confirmed by the referenced application, which explicitly describes various categories of ingestible items as the "Insured Products."

Plaintiffs argue that the policy's inclusion of a specific "Avian Flu" exclusion proves that the policy covers more than contamination and impairment of food products, because Avian Flu assertedly "cannot spread through food." This exclusion is irrelevant. As we recently held in construing Nevada insurance law, "exclusions to coverage are not considered unless the court *first* concludes that there is coverage under the coverage clauses of the policy," and exclusions therefore cannot be used to "expand the policy's coverage beyond its underlying coverage terms." *American Nat'l Prop. & Cas. Co. v. Gardineer*, 25 F.4th 1111, 1118 (9th Cir. 2022) (concluding that Nevada law would follow California law on this point).

**AFFIRMED.**

5